U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

2019 SEP 30  AM 10: 45

CLERK

BY_____ *Uw*_____
DEPUTY CLERK

ALBIN MELI;
CHARLIE MELI;
JEREMIE MELI;

     PLAINTIFFS

vs.

CITY OF BURLINGTON, VERMONT;

BRANDON DEL POZO,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS CHIEF OF POLICE FOR
THE CITY OF BURLINGTON, VERMONT;

JASON BELLAVANCE,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A POLICE OFFICER FOR
THE CITY OF BURLINGTON, VERMONT;

CORY CAMPBELL,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A POLICE OFFICER FOR
THE CITY OF BURLINGTON, VERMONT;

DEFENDANTS

Civil Action
No. 2:19-CV-71

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT
### I. JURISDICTION

1.     Jurisdiction of this court is attained pursuant to 28 U.S.C. § 1331, 1343(a), (3) and (4),

and 2201 and is based on causes of action arising under 42 U.S.C. § 1983 and Bivens v. Six

Unknown Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed. 2d 619 (1971). Plaintiff further invokes the pendent jurisdiction of the Court to hear and decide claims arising under Vermont state law.

## II. PARTIES

2.      Plaintiff ALBIN MELI (hereinafter "ALBIN") was at all times mentioned herein, a resident of the State of Vermont.

3.      Plaintiff CHARLIE MELI (hereinafter "CHARLIE") was at all times mentioned herein, a resident of the State of Vermont.

4.      Plaintiff JEREMIE MELI (hereinafter "JEREMIE") was at all times mentioned herein, a resident of the State of Vermont.

5.      ALBIN, CHARLIE and JEREMIE are brothers.

6.      Defendant CITY OF BURLINGTON is a municipality within the State of Vermont and owns, operates, manages, directs and controls the Burlington Police Department which employs Defendants JASON BELLAVANCE (hereinafter "BELLAVANCE"), and CORY CAMPBELL (hereinafter "CAMPBELL").

7.      Defendant CAMPBELL is, and was at all times mentioned herein, an officer of the City of Burlington Police Department and acting under color of state law. He participated in the events described below. He is being sued in his individual and official capacities.

8.      Defendant BELLAVANCE is, and was at all times mentioned herein, an officer of the City of Burlington Police Department and acting under color of state law. He is a shift supervisor with responsibilities for the control, training, supervision and discipline of officers. He

2

participated in the events described below. He is being sued in his individual and official capacities.

9.      Defendant BRANDON DEL POZO (hereinafter "DEL POZO") is, and was at all times mentioned herein, the chief of police of the Burlington Police Department and acting under color of state law. DEL POZO is ultimately responsible for the control, training, supervision and discipline of officers of the Burlington Police Department. He is being sued in his individual and official capacities.

## III. NATURE OF ACTION

10.     This action is brought by JEREMIE to recover damages which he has suffered, and which he continues to suffer, as a result of, and to declare unconstitutional, certain actions of defendants, who are a municipality, its' police department, local police officers and the chief of police. Defendants acting under color of state law have subjected JEREMIE to an illegal and unwarranted detention and to the unlawful, unreasonable and excessive use of force in effecting that detention.

11.     This action is brought by ALBIN to recover damages which he has suffered, and which he continues to suffer, as a result of, and to declare unconstitutional, certain actions of defendants, who are a municipality, its' police department, local police officers and the chief of police. Defendants acting under color of state law have subjected ALBIN to an illegal and unwarranted detention and to the unlawful, unreasonable and excessive use of force in effecting that detention.

12.     This action is brought by CHARLIE to recover damages which he has suffered, and which he continues to suffer, as a result of, and to declare unconstitutional, certain actions of

3

defendants, who are a municipality, its' police department, local police officers and the chief of police. Defendants acting under color of state law have subjected CHARLIE to an illegal and unwarranted detention.

## IV. PLAINTIFF JEREMIE MELI'S FIRST CAUSE OF ACTION

13.    On September 8, 2018 Plaintiffs ALBIN, CHARLIE, and JEREMIE, along with Kelley Wassic, CHARLIE's significant other, entered a bar, What Ales You, located in Burlington, Vermont, at or about 10:30pm. What Ales You is located in the basement of 4634, 152 St Paul St, Burlington, VT 05401. Plaintiffs, and Kelley Wassic purchased and consumed alcohol while at What Ales You.

14.    On or about September 9, 2018 at approximately 12:00am, while still inside What Ales You, JEREMIE separated from ALBIN, CHARLIE, and Kelley Wassic to use the restroom. Shortly thereafter a verbal altercation involving JEREMIE and several unidentified males commenced. ALBIN and CHARLIE approached What Ales You employees to inform them that Plaintiffs, and Kelley Wassic would be leaving the establishment.

15.    Kelley Wassic observed employees of What Ales You to be physically accosting JEREMIE and shove him into the ascending stairs at the front of the What Ales You establishment. Kelley Wassic and JEREMIE then exited What Ales You.

16.    Shortly thereafter Kelley Wassic re-entered What Ales You to locate ALBIN and CHARLIE where she observed CHARLIE being placed in a headlock by an unidentified male.

17.    ALBIN, CHARLIE, and Kelley Wassic then exited What Ales You.

4

18.     A 911 call was placed to the Burlington Police Department.  Dispatch records indicate that the caller reported that there was an altercation in What Ales You, that no injuries were reported and no weapons were involved.  The caller further reported that three black males were involved.

19.     BELLAVANCE and CAMPBELL were at all times mentioned herein Law Enforcement Officers employed by the Burlington Police Department.

20.     Plaintiffs, and Kelley Wassic proceeded east on Main Street in Burlington away from What Ales You while being followed by employees of What Ales You and the owner of What Ales You, Sinan Eren.

21.     Sinan Eren informed Plaintiffs and Kelley Wassic that he had contacted Law Enforcement.

22.     JEREMIE responded to Sinan Eren by saying that he was going home.

23.     Sinan Eren continued to engage JEREMIE, following him up Main Street.  Sinan Eren jabbed JEREMIE in the chest with his finger several times. JEREMIE gestured with his left hand but kept his right hand at his side while he and Sinan Eren argued with each other.  JEREMIE proclaimed his innocence to Sinan Eren stating that "you guys started this fight".

24.     Defendant BELLAVANCE approached the altercation between Sinan Eren and JEREMIE. Defendant BELLAVANCE did not announce his presence, did not identify himself as a Law Enforcement officer, and did not issue any instructions to either Sinan Eren or JEREMIE. Despite there being no physical altercation between Sinan and Jeremie, Defendant BELLAVANCE shoved JEREMIE in the chest with full force and with both hands. JEREMIE was taken by surprise and unprepared for the blow from BELLAVANCE. JEREMIE fell

backwards striking his head on a wall, which rendered him unconscious. The sound of JEREMIE's head hitting the wall and his eyes rolling back into his head can be clearly heard and seen on BELLAVANCE's body camera.

25.     BELLAVANCE's use of force was completely without cause or justification.

26.     ALBIN, CHARLIE, Kelley Wassic, and Nate Bradbury,  an independent bystander, who just happened to be outside at the time of the assault perpetrated by BELLAVANCE on JEREMIE, all observed JEREMIE as he lay non-responsive on the ground and became concerned for his physical well being.

27.     Defendant BELLAVANCE did not check JEREMIE for a pulse while he was non-responsive. BELLAVANCE rolled JEREMIE onto his stomach. Officer Erica Schaller of the Burlington Police Department (hereinafter "Officer Schaller") arrived and placed her knee on the back of JEREMIE'S neck.

28.     BELLAVANCE informed Officer Schaller of the injury to JEREMIE's head. Officer Schaller did not immediately remove her knee from the back of JEREMIE's neck. While JEREMIE was prone on the ground Officer Vincent Ross of the Burlington Police Department (hereinafter "Officer Ross") threatened to deploy a TASER brand Electronic Stun Device on JEREMIE. Officer Schaller and Officer Ross at the direction of BELLAVANCE assisted in the illegal detention of JEREMIE which was initiated by BELLAVANCE's assault on JEREMIE.

29.     After being arrested, JEREMIE continued to show symptoms of suffering a serious head injury, including the intermittent loss of consciousness and vomiting.

30.     BELLAVANCE informed several Officers and responding Emergency Medical Technicians that JEREMIE had suffered a head injury.

31.     After a brief check from the EMTs, where JEREMIE demonstrated a great deal of confusion. The EMTs cleared him.

32.     Instead of transporting JEREMIE to the hospital, BELLAVANCE directed Officer Schaller and Officer Ross to process JEREMIE at the Burlington Police Department.

33.     Only after being processed and cited for simple assault and disorderly conduct, did Officer Schaller and Officer Ross transport JEREMIE to UVM Medical Center.

34.     Despite there being substantial evidence that JEREMIE had suffered a serious brain injury, UVM Medical only briefly evaluated JEREMIE and then released him back into the custody of the Burlington Police Department.

35.     JEREMIE was then transported to Chittenden County Correctional Facility where he was lodged until the next day.

36.     All criminal charges brought against JEREMIE have been dismissed by the Chittenden State's Attorney's Office.

37.     JEREMIE continues to suffer injuries as a result of the battery of BELLAVANCE including vision, balance and comprehension difficulties that have required special accommodations to be made for JEREMIE as he pursues a medical degree.

38.     BELLAVANCE's intentional use of excessive force and physical brutality on JEREMIE constituted an illegal and unreasonable seizure of JEREMIE.

39.     At no time did JEREMIE commit any crime in violation of any local, state or federal law for which an arrest could lawfully have been made.

40.     At no time did JEREMIE harass, threaten or resist a lawful arrest in any way, commit any illegal acts, or engage in any conduct which in any way justified the acts of BELLAVANCE.

41.     At no time did JEREMIE threaten to physically assault BELLAVANCE or any other person present.

42.     As a direct and proximate result of the actions of Defendant BELLAVANCE, DEL POZO, and the CITY OF BURLINGTON, Plaintiff JEREMIE has suffered injuries and damages, including, but not limited to:

        a.  Physical injury, treatment of which caused Plaintiff JEREMIE to incur medical and therapeutic fees and expenses, and associated incidental and consequential costs;

        b.  Emotional trauma;

        c.  Physical and mental pain and suffering;

        d.  Disruption of normal body functioning;

        e.  Humiliation and embarrassment;

43.     Defendant BELLAVANCE'S intentional use of excessive force and physical brutality on JEREMIE constituted an illegal and unreasonable seizure.

44.     Defendant CITY OF BURLINGTON, as a matter of policy and practice, has, with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont failed to adequately discipline, train, or otherwise direct or supervise police officers concerning the rights of citizens and victims, thereby causing police, including Defendant BELLAVANCE to engage in the unlawful conduct described above.

45.     Defendant CITY OF BURLINGTON, as a matter of policy and practice, has, with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont, failed to properly sanction or discipline police officers, including

8

Defendant BELLAVANCE in this case, for violations of the constitutional rights of citizens and persons, thereby causing police, including Defendant BELLAVANCE to engage in the unlawful conduct set forth herein.

46.     Defendant CITY OF BURLINGTON, as a matter of policy and practice, has, with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont, failed to sanction and discipline police officers, including the Defendant BELLAVANCE in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens and persons by other police officers, thereby causing police, including the Defendant BELLAVANCE, to engage in the unlawful conduct set forth herein.

47.     Defendant DEL POZO has with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont, failed to adequately control, train, supervise and discipline police officers under his command, including Defendant BELLAVANCE for violations of the constitutional rights of citizens and persons, thereby causing police, including Defendant BELLAVANCE to engage in unlawful conduct.

48.     As a direct and proximate result of Defendants BELLAVANCE, DEL POZO, and the CITY OF BURLINGTON actions, referenced above, all of which were unreasonable, unnecessary, and excessive, and which were undertaken by Defendant BELLAVANCE, DEL POZO, and the CITY OF BURLINGTON with gross recklessness and callous indifference to Plaintiff JEREMIE 's protected constitutional rights, privileges and immunities secured to him by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983 and the laws of the State of Vermont, in particular the right to be free from unlawful seizure.

9

## V.  PLAINTIFF JEREMIE MELI'S SECOND CAUSE OF ACTION

49.     Plaintiff JEREMIE hereby realleges and incorporates by reference all prior allegations, as
though fully set forth here.

50.     The actions of Defendant BELLAVANCE in this case constitute as an assault against
JEREMIE when BELLAVANCE shoved JEREMIE into a wall, causing him to strike his head
and be rendered unconscious without cause or justification.

51.     This Court has pendent jurisdiction to hear and adjudicate said claims.

## VI. PLAINTIFF JEREMIE MELI'S THIRD CAUSE OF ACTION

52.     JEREMIE hereby realleges and incorporates by reference all prior allegations, as though
fully set forth here.

53.     The actions of Defendant BELLAVANCE in this case constitute a battery against
JEREMIE by causing unwanted physical contact with JEREMIE when he shoved JEREMIE into
a wall, causing him to strike his head and be rendered unconscious without cause or justification.

54.     This Court has pendent jurisdiction to hear and adjudicate said claims.

## VII. PLAINTIFF JEREMIE MELI'S FOURTH CAUSE OF ACTION

55.     JEREMIE hereby realleges and incorporates by reference all prior allegations, as though
fully set forth here.

56.     The actions of Defendant BELLAVANCE in this case, specifically, shoving JEREMIE
into a wall, causing him to strike his head and be rendered unconscious without cause or
justification, constitutes intentional infliction of emotional distress. Defendant BELLAVANCE's

actions were intentional, extreme and outrageous, and were both the actual and proximate cause
of severe emotional distress to JEREMIE.

57.     This Court has pendent jurisdiction to hear and adjudicate said claims.


## VIII PLAINTIFF JEREMIE MELI'S FIFTH CAUSE OF ACTION

58.     JEREMIE hereby realleges and incorporates by reference all prior allegations, as though
fully set forth here.

59.     The actions of Defendant BELLAVANCE in this case, specifically, shoving JEREMIE
into a wall, causing him to strike his head and be rendered unconscious without cause or
justification, constitutes gross negligence. Defendant BELLAVANCE, as a police officer acting
under color of state law, owed JEREMIE a duty of care as a citizen and as a potential victim of
an assault. Defendant BELLAVANCE shoving JEREMIE without justification, which resulted in
physical injury, pain and suffering, as well as mental and emotional trauma, pain and suffering,
to JEREMIE, is a gross and reckless breach of his duty of care and the actual and proximate
cause of damage to JEREMIE.

60.     This Court has pendent jurisdiction to hear and adjudicate said claims.


## IX. PLAINTIFF JEREMIE MELI'S SIXTH CAUSE OF ACTION

61.     JEREMIE hereby realleges and incorporates by reference all prior allegations, as though
fully set forth here.

62.     Defendants CITY OF BURLINGTON and DEL POZO have negligently failed to control,
train, supervise and discipline police officers under its and his command, including defendant

BELLAVANCE, regarding knowledge, recognition, and respect of, and for violations of, the constitutional rights of citizens and persons, thereby causing police, including BELLAVANCE in this case, to engage in the unlawful conduct complained of herein.

63.     This Court has pendent jurisdiction to hear and adjudicate said claims.


X. PLAINTIFF JEREMIE MELI'S SEVENTH CAUSE OF ACTION

64.     JEREMIE hereby realleges and incorporates by reference all prior allegations as though fully set forth here.

65.     In 2001, Defendant DEL POZO published an academic article which concludes that racial profiling is an effective law enforcement strategy.

66.     In 2015, The City Council of the CITY OF BURLINGTON, had knowledge of DEL POZO's academic writing prior to the time he was selected as the Police Chief for the CITY OF BURLINGTON.

67.     In spite of the official written policies of Defendant CITY OF BURLINGTON, Defendant DEL POZO has allowed a pattern of behavior to form within the ranks of the Burlington Police Department which encourages the unlawful use of force against minorities.

68.     The pattern of behavior of Defendant CITY OF BURLINGTON is based upon disparate use of force and escalation of force in interactions with white persons and black persons. Specifically, officers identify themselves as law enforcement and issue verbal commands when encountering disorderly situations involving white persons. By contrast, officers fail to identify themselves, act aggressively towards and deploy sudden and overwhelming force, which

generally constitutes excessive force in and of itself, when encountering disorderly situations involving black persons.

69.     The implementation of this pattern of behavior, which discriminates against JEREMIE on the basis of a protected status, in violation of the equal protection clause of the 14th Amendment, is a proximate cause of the injuries and damages suffered by JEREMIE.

70.     In the early morning hours of September 8th, 2018, less than 24 hours before BELLAVANCE encountered JEREMIE, a Police Officer of Defendant CITY OF BURLINGTON approached another black man unannounced and threw the black man to the ground rendering him unconscious. This matter is currently pending before the court as Jok v. City of Burlington Et. Al. No. 2:19-cv-00070.

71.     BELLAVANCE was the ranking Police Officer for the Defendant CITY OF BURLINGTON and upon information and belief failed to discipline the officer referenced in paragraph 70, in furtherance of this pattern of behavior.

72.     In 2012, the Vermont Legislature mandated the adoption of bias-free policing policies.

73.     Statistics compiled by the CITY OF BURLINGTON show that black persons are disproportionately represented in the pool of suspects who had force used against them. They are over represented when compared to both whites and also when compared to other races of people of color.

74.     The disparate treatment of black persons has created an environment of racial animus and is a proximate cause of the injuries and damages suffered by JEREMIE.

75.     This Court has pendent jurisdiction to hear and adjudicate said claims.

## XI. PLAINTIFF ALBIN MELI'S FIRST CAUSE OF ACTION

76. ALBIN hereby realleges and incorporates by reference all prior allegations, as though fully set forth here.

77. Defendant CAMPBELL arrived on scene and engaged ALBIN.

78. ALBIN was clearly upset due to his witnessing the assault of his brother JEREMIE by BELLAVANCE.

79. Defendant CAMPBELL saw ALBIN place his hand on another officer multiple times during their interaction.

80. None of ALBIN'S actions were aggressive or threatening.

81. ALBIN attempted to converse with CAMPBELL stating that what he had witnessed was "not right". ALBIN responded to CAMPBELL'S questions and provided his photo ID.

82. CAMPBELL accused ALBIN of escalating the situation. Nate Bradbury responded that CAMPBELL's statement was incorrect. CAMPBELL became combative towards Nate Bradbury telling him to "back the fuck up."

83. Defendant BELLAVANCE is a Sergeant in the Burlington Police Department and observed CAMPBELL, an officer of lower rank become aggressive towards citizen witness Nate Bradbury. BELLAVANCE took no corrective action with regards to CAMPBELL's behavior towards Nate Bradbury and took no action to defuse the tension created by CAMPBELL.

84. ALBIN attempted to return CAMPBELL's attention to the officers who were arresting his brother JEREMIE by placing his hand on CAMPBELL's shoulder and pointing to his brother and asking CAMPBELL, "can you please tell them to stop".

14

85.     In response to this question, CAMPBELL, BELLAVANCE, and other members of the

Burlington Police Department tackled ALBIN, taking him to the ground, tearing ligaments in

ALBIN's thumb and placing him under arrest.

86.     The entire interaction was witnessed by numerous bystanders including Nate Bradbury,

who was standing next to ALBIN throughout his interaction with CAMPBELL.

87.     The entire interaction between CAMPBELL and ALBIN can be clearly seen and heard

by the body camera footage of CAMPBELL, BELLAVANCE, and other Burlington Police

Officers present.

88.     ALBIN informed CAMPBELL that his arm was being injured during the arrest process.

CAMPBELL acknowledged this statement but took no corrective action.

89.      ALBIN was taken into custody and cited for the criminal offenses of Assault on a Law

Enforcement Officer, Disorderly Conduct and Impeding a Law Enforcement Officer.

90.     ALBIN has suffered serious hand injuries necessitating a cast, which have required

physical therapy.

91.     These injuries have greatly impacted ALBIN's ability to perform his professional duties

as an electrical engineer.

92.     All criminal charges brought against ALBIN have been dismissed by the Chittenden

County State's Attorney's Office.

93.     At no time did ALBIN commit any crime in violation of any local, state or federal law for

which an arrest could lawfully have been made.

94.    At no time did ALBIN harass, threaten or resist a lawful arrest in any way, commit any illegal acts, or engage in any conduct which in any way justified the acts of CAMPBELL or BELLAVANCE.

95.    At no time did ALBIN threaten to harm CAMPBELL, BELLAVANCE, or any other person present.

96.    As a direct and proximate result of the actions of Defendants CAMPBELL, BELLAVANCE, DEL POZO, and the CITY OF BURLINGTON, ALBIN has suffered injuries and damages, including, but not limited to:

   a. Physical injury, treatment of which caused Plaintiff JEREMIE to incur medical and therapeutic fees and expenses, and associated incidental and consequential costs;

   b. Emotional trauma;

   c. Physical and mental pain and suffering;

   d. Disruption of normal body functioning;

   e. Humiliation and embarrassment;

97.    Defendants' CAMPBELL and BELLAVANCE intentional use of excessive force and physical brutality on ALBIN constituted an illegal and unreasonable seizure.

98.    Defendant CITY OF BURLINGTON, as a matter of policy and practice, has, with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont failed to adequately discipline, train, or otherwise direct or supervise police officers concerning the rights of citizens and victims, thereby causing police, including

Defendants CAMPBELL and BELLAVANCE, to engage in the unlawful conduct described above.

99.     Defendant CITY OF BURLINGTON, as a matter of policy and practice, has, with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont, failed to properly sanction or discipline police officers, including Defendants CAMPBELL and BELLAVANCE in this case, for violations of the constitutional rights of citizens and persons, thereby causing police, including Defendants CAMPBELL and BELLAVANCE to engage in the unlawful conduct set forth herein.

100.    Defendant CITY OF BURLINGTON, as a matter of policy and practice, has, with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont, failed to sanction and discipline police officers, including the Defendants CAMPBELL and BELLAVANCE in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens and persons by other police officers, thereby causing police, including the Defendants CAMPBELL and BELLAVANCE to engage in the unlawful conduct set forth herein.

101.    Defendant DEL POZO has with deliberate indifference to well-established constitutional and civil rights of citizens of the United States and State of Vermont, failed to adequately control, train, supervise and discipline police officers under his command, including Defendants CAMPBELL and BELLAVANCE, for violations of the constitutional rights of citizens and persons, thereby causing police, including Defendants CAMPBELL and BELLAVANCE to engage in unlawful conduct.

102.    As a direct and proximate result of Defendants' CAMPBELL, BELLAVANCE, DEL

POZO, and the CITY OF BURLINGTON actions, referenced above, all of which were

unreasonable, unnecessary, and excessive, and which were undertaken by Defendants

CAMPBELL, BELLAVANCE, DEL POZO, and the CITY OF BURLINGTON with gross

recklessness and callous indifference to ALBIN 's protected constitutional rights, privileges and

immunities secured to him by the Fourth, Fifth and Fourteenth Amendments to the United States

Constitution, in violation of 42 U.S.C. § 1983 and the laws of the State of Vermont, in particular

the right to be free from unlawful seizure.


## XII. PLAINTIFF ALBIN MELI'S SECOND CAUSE OF ACTION

103.    ALBIN hereby realleges and incorporates by reference all prior allegations, as though

fully set forth here.

104.    The actions of Defendant BELLAVANCE in this case constitute an intentional infliction

of emotional distress on ALBIN when BELLAVANCE assaulted ALBIN'S brother JEREMIE

and unlawfully took him into custody in front of ALBIN and when CAMPBELL and

BELLAVANCE physically assaulted ALBIN and took him into custody without just cause.

105.    The actions of Defendant CAMPBELL and BELLAVANCE in this case, specifically,

constitutes intentional infliction of emotional distress. Defendant CAMPBELL and

BELLAVANCE'S actions were intentional, extreme and outrageous, and were both the actual

and proximate cause of severe emotional distress to Plaintiff ALBIN.

106.    This Court has pendent jurisdiction to hear and adjudicate said claims.

## XIII. PLAINTIFF ALBIN MELI'S THIRD CAUSE OF ACTION

107.    ALBIN hereby realleges and incorporates by reference all prior allegations, as though fully set forth here.

108.    The actions of Defendant CAMPBELL and BELLAVANCE in this case constitute a battery against ALBIN, by causing unwanted physical contact with ALBIN when CAMPBELL and BELLAVANCE threw ALBIN to the ground and intentionally injured him.

109.    This Court has pendent jurisdiction to hear and adjudicate said claims.

## XIV. PLAINTIFF ALBIN MELI'S FOURTH CAUSE OF ACTION

110.    ALBIN hereby realleges and incorporates by reference all prior allegations, as though fully set forth here.

111.    The actions of Defendant CAMPBELL and BELLAVANCE in this case, specifically, when they threw ALBIN to the ground and intentionally injured him without cause or justification, constitutes gross negligence. Defendants CAMPBELL and BELLAVANCE, as police officers acting under color of state law, owed ALBIN a duty of care as a citizen and as a potential victim of an assault. Defendant CAMPBELL and BELLAVANCE throwing ALBIN to the ground and intentionally injuring him without justification, which resulted in physical injury, pain and suffering, as well as mental and emotional trauma, pain and suffering, is a gross and reckless breach of their duty of care and the actual and proximate cause of damage to the Plaintiff.

112.    This Court has pendent jurisdiction to hear and adjudicate said claims.

19

## XV. PLAINTIFF ALBIN MELI'S FIFTH CAUSE OF ACTION

113.   ALBIN hereby realleges and incorporates by reference all prior allegations, as though fully set forth here.

114.   Defendants CITY OF BURLINGTON, BELLAVANCE and DEL POZO have negligently failed to control, train, supervise and discipline police officers under its and his command, including defendants BELLAVANCE and CAMPBELL, regarding knowledge, recognition, and respect of, and for violations of, the constitutional rights of citizens and persons, thereby causing police, including defendants BELLAVANCE and CAMPBELL in this case, to engage in the unlawful conduct complained of herein.

115.   This Court has pendent jurisdiction to hear and adjudicate said claims.

## XVI. PLAINTIFF ALBIN MELI'S SIXTH CAUSE OF ACTION

116.   ALBIN hereby realleges and incorporates by reference all prior allegations as though fully set forth here.

117.   In 2001, Defendant DEL POZO published an academic article which concludes that racial profiling is an effective law enforcement strategy.

118.   In 2015, The City Council of the CITY OF BURLINGTON, had knowledge of DEL POZO's academic writing prior to the time he was selected as the Police Chief for the CITY OF BURLINGTON.

119.   In spite of the official written policies of Defendant CITY OF BURLINGTON, Defendant DEL POZO has allowed a pattern of behavior to form within the ranks of the Burlington Police Department which encourages the unlawful use of force against minorities.

20

The pattern of behavior of Defendant CITY OF BURLINGTON is based upon disparate use of force and escalation of force in interactions with white persons and black persons. Specifically, officers identify themselves as law enforcement and issue verbal commands when encountering disorderly situations involving white persons. By contrast, officers fail to identify themselves, act aggressively towards and deploy sudden and overwhelming force, which generally constitutes excessive force in and of itself, when encountering disorderly situations involving black persons.

120.     The implementation of this pattern of behavior which discriminates against ALBIN on the basis of a protected status, in violation of the equal protection clause of the 14th Amendment, is a proximate cause of the injuries and damages suffered by ALBIN.

121.     In the early morning hours of September 8th, 2018, less than 24 hours before CAMPBELL encountered ALBIN, a Police Officer of Defendant CITY OF BURLINGTON approached another black man unannounced and threw the black man to the ground rendering him unconscious. This matter is currently pending before the court as Jok v. City of Burlington Et. Al. No. 2:19-cv-00070.

122.     BELLAVANCE was the ranking Police Officer for the Defendant CITY OF BURLINGTON and upon information and belief failed to discipline the officer referenced in paragraph 121, in furtherance of the pattern of behavior.

123.     In 2012, the Vermont Legislature mandated the adoption of bias-free policing policies.

124.     Statistics compiled by the CITY OF BURLINGTON show that black persons are disproportionately represented in the pool of suspects who had force used against them. They are over represented when compared to both whites and also when compared to other races of people of color.

21

125.    This pattern of behavior and the disparate treatment of black persons has created an environment of racial animus and is a proximate cause of the injuries and damages suffered by ALBIN.

126.    This Court has pendent jurisdiction to hear and adjudicate said claims.


## XVII. PLAINTIFF CHARLIE MELI'S FIRST CAUSE OF ACTION

127.    CHARLIE hereby realleges and incorporates by reference all prior allegations, as though fully set forth here.

128.    CHARLIE witnessed both his brothers being assaulted and arrested by members of the Burlington Police Department including Defendants CAMPBELL and BELLAVANCE.

129.    CHARLIE was emotionally distressed as he witnessed his brothers being taken into custody.

130.    CHARLIE was detained and placed in the back of a squad car. While talking with Officer John Lewis, Officer Lewis acknowledged that CHARLIE didn't push anyone.

131.    CHARLIE informed Officer John Lewis of the Burlington Police Department that he lived in Burlington.

132.    BELLAVANCE instructed Officer John Lewis to issue a citation for impeding an officer or disorderly conduct but noted that he did not observe the behavior alleged to have occurred.

133.    CHARLIE was detained at the scene, arrested and then lodged at Chittenden County Correctional Facility where he was cited for Disorderly Conduct.

134.    All charges against CHARLIE were subsequently dismissed by the Chittenden County State's Attorney's Office.

135.    At no time did CHARLIE commit any crime in violation of any local, state or federal law for which an arrest could lawfully have been made.

136.    At no time did CHARLIE harass, threaten or resist a lawful arrest in any way, commit any illegal acts, or engage in any conduct which in any way justified the acts of BELLAVANCE.

137.    At no time did CHARLIE threaten to harm anyone present.

138.    As a direct and proximate result of the actions of Defendants BELLAVANCE, DEL POZO, and the CITY OF BURLINGTON, CHARLIE MELI has suffered injuries and damages, including, but not limited to:

    a.  Emotional trauma;

    b.  Mental pain and suffering;

    c.  Humiliation and embarrassment;

139.    As a direct and proximate result of Defendants' BELLAVANCE, CAMPBELL, DEL POZO, and the CITY OF BURLINGTON actions, referenced above, all of which were unreasonable, unnecessary, and excessive, and which were undertaken by Defendants BELLAVANCE, CAMPBELL, DEL POZO, and the CITY OF BURLINGTON with gross recklessness and callous indifference to CHARLIE'S protected constitutional rights, privileges and immunities secured to him by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983 and the laws of the State of Vermont, in particular the right to be free from unlawful seizure.

XVIII. PLAINTIFF CHARLIE MELI'S SECOND CAUSE OF ACTION

140.    CHARLIE hereby realleges and incorporates by reference all prior allegations as though fully set forth here.

141.    In 2001, Defendant DEL POZO published an academic article which concludes that racial profiling is an effective law enforcement strategy.

142.    In 2015, The City Council of the CITY OF BURLINGTON, had knowledge of DEL POZO's academic writing prior to the time he was selected as the Police Chief for the CITY OF BURLINGTON.

143.    In spite of the official written policies of Defendant CITY OF BURLINGTON, Defendant DEL POZO has allowed a pattern of behavior to form within the ranks of the Burlington Police Department which encourages the unlawful use of force against minorities.

144.    The pattern of behavior of Defendant CITY OF BURLINGTON is based upon disparate use of force and escalation of force in interactions with white persons and black persons. Specifically, officers identify themselves as law enforcement and issue verbal commands when encountering disorderly situations involving white persons. By contrast, officers fail to identify themselves, act aggressively towards and deploy sudden and overwhelming force, which generally constitutes excessive force in and of itself, when encountering disorderly situations involving black persons.

145.    The implementation of this pattern of behavior which discriminates against CHARLIE on the basis of a protected status, in violation of the equal protection clause of the 14th Amendment, is a proximate cause of the injuries and damages suffered by CHARLIE.

146.    In the early morning hours of September 8th, 2018, less than 24 hours before BELLAVANCE encountered JEREMIE, a Police Officer of Defendant CITY OF

BURLINGTON approached another black man unannounced and threw the black man to the ground rendering him unconscious. This matter is currently pending before the court as Jok v. City of Burlington Et. Al. No. 2:19-cv-00070.

147.    BELLAVANCE was the ranking Police Officer for the Defendant CITY OF BURLINGTON and upon information and belief failed to discipline the officer referenced in paragraph 145, in furtherance of the pattern of behavior.

148.    In 2012, the Vermont Legislature mandated the adoption of bias-free policing policies.

149.    Statistics compiled by the CITY OF BURLINGTON show that black persons are disproportionately represented in the pool of suspects who had force used against them. They are over represented when compared to both whites and also when compared to other races of people of color.

150.    This pattern of behavior and the disparate treatment of black persons has created an environment of racial animus and is a proximate cause of the injuries and damages suffered by CHARLIE.

151.    This Court has pendent jurisdiction to hear and adjudicate said claims.

## XIX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request the following relief:

- a.  Compensatory damages;
- b.  Punitive damages;

c.  An order of this Court declaring the above actions of Defendants to be illegal and in violation of Plaintiffs' constitutional, statutory and common law rights;

d.  Reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and other applicable authority;

e.  Such other and further relief as appears reasonable, necessary, just and appropriate.

Dated at Brattleboro, Vermont, this _25th_ day of September, 2019.

Respectfully Submitted,
ALBIN MELI, CHARLIE MELI
And JEREMIE MELI

EVAN CHADWICK, ESQ.
CHADWICK & SPENSLEY, PLLC
136 High Street
Brattleboro, VT 05301
(802) 257-7161
evan@chadwicklawvt.com