IN THE UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| ALBIN MELI, CHARLIE MELI, AND JEREMIE MELI, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 2:19–CV–71 |
| | ) |
| CITY OF BURLINGTON, VERMONT, BRANDON DEL POZO, JASON BELLAVANCE, AND CORY CAMPBELL | ) ) ) ) ) |
| Defendants. | ) |

| | |
|---|---|
| MABIOR JOK, | ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 2:19–CV–70 |
| | ) |
| CITY OF BURLINGTON, VERMONT, BRANDON DEL POZO, JASON BELLAVANCE, AND JOSEPH CORROW | ) ) ) ) ) |
| Defendants. | ) |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION FOR ADDITIONAL TIME TO PROPOUND REQUESTS TO PRODUCE ON BRANDON DEL POZO AND THE CITY OF BURLINGTON

NOW COME Defendants, by and through their attorneys, Lynn, Lynn, Blackman, & Manitsky P.C., and hereby oppose Plaintiffs' Consolidated Motion for Additional Time to Propound Requests to Produce on Brandon del Pozo and the City of Burlington. In support of this Opposition, Defendants submit the following Memorandum of Law.

## MEMORANDUM OF LAW

### Introduction

Discovery in this case is rapidly transforming into a fishing expedition by Plaintiffs. *See Barbara v. MarineMax, Inc.*, No. 12–CV–368, 2013 WL 1952308, at *2 (E.D.N.Y. May 20, 2013) ("The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." (citation omitted)). At this juncture it would seem a discovery conference with the Court would prove helpful in resolving not only the scope of documents Defendants must produce, but also the extent (if any) Plaintiffs may probe the completely unrelated twitter accounts of former Chief del Pozo.

In responding to Plaintiffs' incendiary motions, indicative of a pattern and practice of Plaintiffs' counsel to inundate defense counsel with "discovery emails," while, at times, refusing to set up telephone conferences, (*see generally* Aff. of Kienan D. Christianson), Defendants are reminded of the sage advice provided by Judge Katz:

> We wish to start our consideration of the matter by correcting a misleading locution mentioned in plaintiff's memo—"the 26(h) letter." There is no such thing as a 26(h) letter. Many years reviewing 26(h) letters, including the snippy examples here, provides empirical evidence of their inutility. The purpose of Rule 26(h) is to resolve problems. Exchanges of letters, as here, fails to

> meet that purpose. Moving beyond the empirical, we note that Rule 26(h) bars the filing of a motion to compel "unless counsel making the motion has conferred with opposing counsel . . . ." The Rule does not precondition a motion to compel upon writing a letter, sending an e-mail or, as once suggested, "my paralegal called his paralegal." Rather, it admonishes "confer." An interesting word. Webster's Third tells us it derives from the Latin "*conferre* to bring together."
>
> Latin compounds beginning with "con," or its variant "co," mean "together" and generally imply physical contiguity. Hence convocation derives from the Latin *convocare*, all together, assemble; convention from the Latin *convenire*, come together, assemble; contain from *contenere*, hold together; and confront, which Justice Scalia explained as meeting brow to brow form the Latin *frons* for forehead. *See Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Of course, this being a medical case, we are constrained to note that coitus derives as well from Latin, *itus* meaning come together—an act poorly suited to performance by exchange of letters. It would therefore appear that Rule 26(h) envisions some closer proximity when it speaks of "confer" than merely sending letters.

*Mashteare v. Fletcher Allen Health Care*, No. 350-05 CnCiv, at 1–2 (Vt. Super. May 21, 2007) (attached as Exhibit 1 to this Opposition).

A quick perusal of counsel's affidavit filed in conjunction with their motion reveals that they believe inundating opposing counsel with emails is sufficient to satisfy their obligations to confer as stated in Local Rule 26(c). *See id.* ("A party may not file a Fed .R. Civ. P. 26 or 37 motion unless the party has *conferred* with opposing counsel in a good faith effort to reduce or eliminate the controversy or arrive at a mutually satisfactory resolution."); *see also Acosta v. Puccio*, No. 18–CV–532, 2019 WL 20098317, at *3 (D. Conn. May 10, 2019) ("[C]ounsel for parties to any discovery dispute are required by Rule 37(a)(1) . . . and Local Rule 37(a) to have conferred with one another and to have made a good faith effort to eliminate or reduce the area of controversy. . . the good faith conference obligation . . . require counsel to confer either face-

to-face or by telephone; exchanges of correspondence are not sufficient in and of themselves to satisfy counsel's good faith conference obligations."); *Big Apple Pyrotechnics v. Sparktacular Inc.*, No. 05–CV–9994, 2006 WL 587331, at *1 (S.D.N.Y. Mar. 8, 2006) ("'Confer' means to meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, cannot be resolved without judicial intervention."). It is perhaps worth reminding Plaintiffs' counsel that confer does not mean deluge opposing counsel with discoverys emails.

As to the substance of Plaintiffs' motion, the Court is likely well-aware due to the publication by various media outlets in and around Burlington, that former Police Chief Brandon del Pozo was using a fake Twitter account to troll a personal critic of his, Charles Winkelman. (*See, e.g.*, ECF No. 38, Doc. 44-4.) It was later revealed that Deputy Chief Jan Wright was using a fake Facebook account to also troll Mr. Winkelman. (*See* Ex. 2 attached to this Opposition.) These facts are largely not in dispute. What is in dispute, and what Plaintiffs have yet to explain, is what, if any, relevance these accounts have to the issue of whether excessive force was employed upon Plaintiffs when they were arrested on September 8, 2018. Although in civil actions discovery is generally quite broad, this is not without limitation. *See* F.R.C.P. 26(b)(1).

Since the revelation of the Twitter and Facebook accounts, Plaintiffs have been attempting to serve upon Defendants ever more invasive discovery requests—requests which have nothing to do with the substance of Plaintiffs' claims. As noted in Attorney Hovestadt's affidavit filed in support of the rolling production schedule, the Defendants are currently in the process of reviewing and compiling documents in excess of 7600 documents in the *Meli* matter and 4900 documents in the *Jok* matter. (*See* EFC No. 32 for *Meli*, and Ex. 3 attached to this

Opposition.) This does not include the over 48,000 documents that were pulled as a result of the search terms Plaintiffs provided for BPD to search on their servers. (*See* Christianson Aff. at ¶ 11.)

This is not a case of Defendants simply standing back and refusing to produce documents to Plaintiffs or a case of Defendants neglecting their discovery obligations. Far from it. Indeed, when Defendants counsel learned of the secret Twitter accounts, they immediately supplemented former Chief del Pozo's discovery responses. (*See* ECF No. 37 for *Meli*, and ECF No. 33 for *Jok.*). In addition, in full compliance with the rolling production schedule, Defendants have produced over 14,000 pages of documents to Plaintiffs in response to the search terms they provided to Defendants. (*See* ECF No. 45 for *Meli*, and ECF No. 41 for *Jok*; *see also* Christianson Aff. ¶ 10.)

**Facts**

This case is not complicated. Plaintiffs allege that on the night of September 8, 2018, Defendants used excessive force on them during their arrests. (*See generally* Am. Compl., ECF Nos. 19 (Meli), 21 (Jok).) Defendants contend that the amount of force was reasonable under the circumstances and did not violate any clearly established law. (*See generally* Answer, EFC No. 22 (Meli), 20 (Jok).) There is body camera footage for both incidents that Defendants have already produced to Plaintiffs. *See Addona v. D'Andrea*, 602 Fed. App'x 76, 77–78 (2d Cir. Jun. 7, 2017) (holding it was appropriate for trial court to rely upon body camera footage in granting summary judgment to defendant police officers where body camera footage supported trial court's finding that the force employed by defendant officers was not unreasonable.").

After the parties commenced discovery, it was revealed that former Chief del Pozo failed to disclose a Twitter account used to troll a personal critic of his. (*See* ECF No. 38-3.) It is

5

unclear how the former Chief's Twitter account has any relevance to whether excessive force was used against Plaintiffs in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (explaining that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" (internal quotation marks and citation omitted)); *see also Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("To determine the constitutionality of a seizure [w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." (internal quotation marks omitted)).

Likewise, it remains unclear how the former Chief's Twitter account has any relevance to whether the Burlington Police Department applies its use of force policy with racial animus towards black and brown folks. *See Edrei v. City of New York,* 254 F. Supp.3d 565, 578-79 (S.D.N.Y. 2017) ("A plaintiff can maintain an equal protection claim 'so long as he establishes that he was treated differently than similarly situated persons and the unequal treatment was motivated by personal animus."); *see also Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) ("There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause. A plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.' . . . Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. . . . A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.") (citations omitted)). None of the tweets cited in ECF No. 38-3 in any way mentions use of force, any of the Plaintiffs in these cases, or in any way suggests that the City's Use of Force Policy is being applied in an intentionally discriminatory way.

**Standard**

As this Court has recently observed, "Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as including 'any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Jenkins v. Miller*, No. 12–CV–5561387, at *1 (D. Vt. Oct. 29, 2019) (slip copy) (emphases added).

"In determining whether a discovery request is proportional to the disputed issues, [F.R.C.P.] 26(b)(1) directs the trial court to consider 'the importance of the issue at stake in the action, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Indeed, since the 2015 Amendments to the F.R.C.P. 26, courts have held that proportionality 'has assumed greater importance in discovery disputes." *Woodward v. Afify*, No. 14–CV–856, 2017 WL 279555, at *1 (W.D.N.Y. Jan. 23, 2017); *see also Viagasi v. Solow Mgmt. Corp.*, 11–CV–5088, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) (explaining that the recent amendment to Rule 26 was "intended to encourage judges to be more aggressive in discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of *relevant* information."). None of these factors weigh in favor of the Plaintiffs' broad, invasive requests.[1]

---

[1] Although Plaintiffs are technically requesting permission by the Court to serve additional discovery requests, Defendants contest the substance of those requests as even with permission to serve additional requests, Plaintiffs

**Argument**

**1. Plaintiffs' Request seeks Irrelevant Information.**

Although Rule 26 is "liberally construed," it is not without its limitations. *MacCartney v. O'Dell*, No. 14–CV–3925, 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 16, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Discovery is relevant "if there is a possibility that the information sought may [] have a bearing on *any party's* claim or defense." *Id*. (citation omitted, emphasis in original). "It is well-established within this Circuit that [Rule 26] will be satisfied if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action." *Id*. However, the burden of demonstrating the relevance of the discovery "falls on the party seeking discovery, but once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Joseph v. Gnutti*, No. 15–CV–8910, 2016 WL 4083433, at *1 (S.D.N.Y. Jul. 25, 2016) (quotation omitted).

As an initial matter, Plaintiffs have not met their burden of establishing how documents related to the former Chief's use of a secret Twitter account to troll his political critic is in any way relevant to the claims raised in their Amended Complaint. Indeed, Plaintiffs admit that the accounts revealed material that was "innocuous and primarily unrelated to this case." (ECF No. 38 at 4.) Although not the standard for discovery, it is worth noting that none of this material is likely admissible at trial, and Plaintiffs already have all the information they need to impeach former Chief del Pozo.

---

have made clear they are seeking information wholly irrelevant to the issues presented in these cases and which will only further balloon the already voluminous discovery Plaintiffs have requested. (*See* ECF No. 38 at 3 ("Plaintiffs seek the ability to request documents which relate to this recently learned development and the investigation performed by [the] City of Burlington into Mr. del Pozo, as well as documents and communications regarding or involving the assistance he received from Jan Wright and members of the City Attorney's office in producing his discovery answers.").).

Likewise, it is unclear how who advised the Chief on his discovery responses from the City Attorney's Office is relevant to this matter, let alone discoverable given the obvious attorney-client privilege. Indeed, as Plaintiffs well know, the attorney that did assist the Chief was "unaware of del Pozo's Twitter 'account issue'." (*See* Exhibit 4 attached to this Opposition.) Thus, the only purpose that Defendants can see in requesting this additional material is to embarrass and harass the City Attorney's Office over material that, even were it discoverable, would not be admissible at trial. The Court should not allow this fishing expedition to continue.

**2. Plaintiffs' Request are not Proportional.**

As this Court stated "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." *Jenkins*, 2019 WL 5561387, at *2 (quoting F.R.C.P. 26 Advisory Committee's Note (2015)). Plaintiffs have yet to meet this threshold in both their emails with counsel and in their filings with the Court. Indeed, in their filing with the Court, they essentially admit that their requests are nothing more than a fishing expedition. (*See* ECF No. 38 at 4, (noting that Plaintiffs' initial review of Defendant del Pozo's social media accounts revealed content "to be innocuous and primarily unrelated to this case.")). As noted in the exhibits attached to their Motion for Additional Discovery, none of the former Chief's tweets even mentions the term "excessive force," or mentions race in any way that would imply the kind of racial animus Plaintiffs need to prove in order to make out their Fourteenth Amendment Equal Protection claim. Defendants have disclosed all of Chief del Pozo's social media accounts, including accounts that could hardly be categorized as social media. It is unclear what Plaintiffs are requesting, and at this juncture it appears that Plaintiffs are primarily concerned with further

harassing former Chief del Pozo as a ploy for more media coverage in this case, (*see* Exhibit 4 attached to this Opposition), and as they appear to be doing to Officer Corrow in their most recent filing with the Court. (*See* ECF Nos. 40, 41 (disclosing inadvertently disclosed material on public docket that is in no way relevant to the claims raised by Plaintiffs and which Defense Counsel requested returned pursuant to F.R.C.P. 26(b)(5)(B)).) The Court should not allow Plaintiffs to continue to harass Defendants with ever more invasive discovery requests, when those requests are nothing more than fishing expeditions to drum up potentially embarrassing material on an issue that is in no way related to the substance of Plaintiffs' Amended Complaint.

**Conclusion**

Defendants have attempted to work with Plaintiffs in resolving discovery disputes time and time again. Rather than work to resolve these disputes, Plaintiffs have chosen instead to deluge Defendants with ever more acrimonious emails in no way designed to resolve the underlying discovery disputes. The damage by the former Chief's non-disclosure is done. Plaintiffs should not be allowed to continue this fishing expedition. The Court should deny the motion for additional discovery.

DATED at Burlington, Vermont, this 21st day of January, 2020.

By:/s/ *Pietro J. Lynn*_____
Pietro J. Lynn, Esq.
Lynn, Lynn, Blackman & Manitsky, P.C.
76 St. Paul Street
Burlington, VT 05401
(802) 860-1500