**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT**

| | | |
|---|---|---|
| ALBIN MELI, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:19–CV–71 |
| | ) | |
| CITY OF BURLINGTON, VERMONT, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF BURLINGTON, VERMONT'S, DEFENDANT BRANDON DEL
POZO'S, AND DEFENDANT JASON BELLAVANCE'S
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF JEREMIE MELI'S CLAIMS**

Defendant City of Burlington, Vermont, Defendant Brandon del Pozo, and Defendant

Jason Bellavance, through their undersigned counsel and pursuant to Federal Rule of Civil

Procedure 56 and Local Rule 56, move for summary judgment on the claims asserted by Plaintiff

Jeremie Meli.  Defendants rely on the Statement of Material facts filed herewith and the

following Memorandum of Law in support of Defendants' Motion for Summary Judgment.

**I.     INTRODUCTION**

> "Not every push or shove, even if it may later seem unnecessary in
> the peace of a judge's chambers, violates the Fourth Amendment."
>
> *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

Plaintiff Jeremie Meli – from the calm remove of two and a half years after September 9,

2018 – now presents himself as the victim of racially motivated brutality by Sergeant Jason

Bellavance and the Burlington Police Department.  On September 9, 2018, however, Plaintiff

was a different figure.

On September 9, 2018, Plaintiff was drinking with his brothers, Albin and Charlie.  The

last thing Plaintiff remembers from September 9, 2018 is having a shot of whiskey in a bar and

heading to the bathroom.  Others present on September 9, 2018 remember Plaintiff being involved in an altercation on his way to the bathroom.  That altercation escalated and prompted the bar to call the Burlington Police Department for help.  When Plaintiff was asked to leave the bar because of his role in the altercation, Plaintiff and his brothers refused to go and physically fought with bar employees.  Plaintiff punched a bartender in the face four times.

When Sergeant Bellavance arrived in response to the bar's call for help, he was informed Plaintiff had punched a bartender in the face multiple times.  Sergeant Bellavance found Plaintiff, the perpetrator of a recent assault, outside on a sidewalk, chest-to-chest with the bar owner, yelling in the owner's face.  To separate Plaintiff from the bar owner and to prevent Plaintiff from committing a second assault, Defendant Bellavance pushed Plaintiff in the chest. Plaintiff then fell backward and into a wall, hitting his head.

The Burlington Police Department's internal investigation of Defendant Bellavance's push of Plaintiff determined the push was neither unlawful nor excessive.  Fourth Amendment jurisprudence confirms Defendant Bellavance's push of Plaintiff was a reasonable use of force. Plaintiff is without evidence that race influenced Sergeant Bellavance's use of force on September 9, 2018 or the Burlington Police Department's use of force generally.  Ultimately, the evidence of record shows Defendant Bellavance's push was a reasonable response to the tense, dynamic circumstances that existed, not a racially-motived act of violence as Plaintiff claims.

The United States Supreme Court's guidance in *Graham* is apt here.  When Plaintiff's claims are evaluated with attention paid to the circumstances that existed on September 9, 2018, it becomes clear Plaintiff's claims present no genuine issues of material fact.  Accordingly, Defendants respectfully submit they are entitled to summary judgment on Plaintiff's claims.

II.     <u>**FACTUAL BACKGROUND**</u>

On September 9, 2018, Plaintiff Jeremie Meli had an encounter with the Burlington Police Department during which force was used against him.  Defs' Statement of Undisputed Material Facts ("SUMF") at ¶ 1.  Prior to his encounter with the police, Plaintiff had been drinking alcohol with his brothers, Albin Meli and Charlie Meli.  *Id.* at ¶ 2.  According to Plaintiff, he first had two Fiddlehead beers at Splash at the Boathouse while waiting for his brother's girlfriend, Kelly Wassick, to finish her shift at the restaurant.  *Id.* at ¶ 3.  After a stop at Albin's and Charlie's apartment to allow Albin, Charlie, and Kelly to change, the group made its way to What Ales You, arriving sometime after 10:30pm.  *Id.* at ¶ 4.  The group, anticipating drinking more that evening, took an Uber to What Ales You.  *Id.* at ¶ 5.

Shortly after arriving at What Ales You, Plaintiff had a shot of whisky.  *Id.* at ¶ 6.  The only thing Plaintiff remembers from the period between that shot of whiskey – which Plaintiff claims was only his third drink – and his encounter with the Burlington Police Department is heading to the bathroom at What Ales You.  *Id.* at ¶ 7.  Plaintiff's next memories are "split second" flashes of being on the ground outside the bar and then being in a hospital.  *Id.* at ¶ 8.  Plaintiff does not recall his encounter with the Burlington Police Department, the bar fight that preceded Plaintiff's encounter with the Burlington Police Department, or Plaintiff's assault of a What Ales You staff member as part of that bar fight.  *Id.* at ¶ 9.  Other witnesses are able to fill in the details.

Matthew Fay was tending bar at What Ales You on the evening of September 8.  *Id.* at ¶ 10.  Mr. Fay's attention was drawn to a commotion, which he climbed over the bar to investigate.  *Id.* at ¶ 11.  After climbing over the bar, Mr. Fay saw Plaintiff "aggressively in another patron's face sort of yelling at him."  *Id.* at ¶ 12.  Mr. Fay approached Plaintiff, told

Plaintiff he needed to leave the bar, and began escorting Plaintiff towards the door.  *Id.* at ¶ 13.  While Mr. Fay was escorting Plaintiff to the door, Plaintiff attempted to return to the confrontation.  *Id.* at ¶ 14.  Plaintiff's brothers, Albin and Charlie, also stopped Mr. Fay, put their hands on Mr. Fay's shoulders, and told Mr. Fay he could not make Plaintiff leave the bar.  *Id.* at ¶ 15.  While Mr. Fay was explaining to Albin and Charlie why Plaintiff needed to leave the bar, Plaintiff "threw about four or five punches and hit [Mr. Fay] in the face four or five times."  *Id.* at ¶ 16.  One of Mr. Fay's coworkers and friends, Samuel Thibault, saw Plaintiff punch Mr. Fay in the face and went to help remove Plaintiff and his brothers from the bar.  *Id.* at ¶ 17.  Around that same time, another bartender at What Ales You called the Burlington Police Department.  *Id.* at ¶ 18.  After one of Plaintiff's brothers tackled Mr. Thibault, Mr. Fay and Mr. Thibault were able to get Plaintiff and his brothers out of the bar.  *Id.* at ¶ 19.  Once outside the bar, Plaintiff and his brothers rounded the corner onto Main Street and moved towards the Flynn Theater.  *Id.* at ¶ 20.

While Plaintiff and his brothers were fighting with the staff of What Ales You, Defendant Sergeant Jason Bellavance was in the process of responding to the bar's call to the Burlington Police Department for help.  *Id.* at ¶ 21.  As he arrived on scene, Defendant Bellavance encountered Mr. Fay at the corner of Main Street and St. Paul Street.  *Id.* at ¶ 22.  Mr. Fay informed Defendant Bellavance that Plaintiff had punched him in the face and pointed Defendant Bellavance up Main Street to Plaintiff.  *Id.* at ¶ 23.  As Defendant Bellavance approached Plaintiff, he believed he had probable cause to arrest Plaintiff for simple assault.[1]  *Id.* at ¶ 24.

As Defendant Bellavance moved closer to Plaintiff, he could see and hear Plaintiff arguing with Sinan Eren, the owner of What Ales You.  *Id.* at ¶ 25.  A bystander, Nathan

---

[1] As discussed below, Plaintiff was subsequently arrested for simple assault, as well as disorderly conduct and resisting arrest.

Bradbury, described the dialogue between Plaintiff and Mr. Eren as "angry and agitated." *Id.* at

¶ 26.  Defendant Bellavance heard Plaintiff yelling at Mr. Eran and noted Plaintiff seemed to be

the aggressor in the confrontation.  *Id.* at ¶ 27.  As he approached Plaintiff, Defendant Bellavance

felt Plaintiff – who Defendant Bellavance knew to have just assaulted Mr. Fay by punching him

in the face – was likely to engage in another fight with Mr. Eren.  *Id.* at ¶ 28.  In Defendant

Bellavance's words:

> I had information [Plaintiff] had assaulted [Mr. Fay] and [Plaintiff]
> was actively arguing with [Mr. Eren] and it appeared like there was
> about to be another fight . . . that is the totality of the circumstances.

*Id.* at ¶ 29.

Against that background, Defendant Bellavance pushed Plaintiff with "a reasonable

amount of force to try to separate [Plaintiff] who [had been] identified as assaulting [Mr. Fay]

and appeared to be actively agitated, yelling at, and about to assault [Mr. Eran]."  *Id.* at ¶ 30.  Mr.

Fay and Mr. Bradbury witnessed the incident and confirmed Defendant Bellavance pushed

Plaintiff, with two hands, in the chest.  *Id.* at ¶ 31.  After he was pushed by Defendant

Bellavance, Plaintiff fell backward and into a wall.  *Id.* at ¶ 32.

Defendant Bellavance called for medical assistance for Plaintiff and, along with other

officers, began arresting Plaintiff.  *Id.* at ¶ 33.  Plaintiff physically resisted arrest by attempting to

kick the arresting officers and by thrashing from side to side.  *Id.* at ¶ 34.  Plaintiff was

subsequently charged with simple assault, disorderly conduct, and resisting arrest.  *Id.* at ¶ 35.

The Burlington Police Department conducted an internal investigation of Defendant

Bellavance's use of force against Plaintiff.  *Id.* at ¶ 36.  The investigation determined Defendant

Bellavance's push of Plaintiff was not consistent with Burlington Police Department training,

and Defendant Bellavance was suspended for four days without pay as a result.  *Id.* at ¶ 37.  The

internal investigation also concluded, however, that Defendant Bellavance's push of Plaintiff was neither unlawful nor excessive. *Id.* at ¶ 38.

Plaintiff now brings claims against Defendant Bellavance, Defendant City of Burlington, Vermont and Defendant Brandon del Pozo, arising from his interaction with Defendant Bellavance. For the reasons set forth below, Defendants are entitled to summary judgment on Plaintiff's claims against them.

## III.    **<u>STANDARD OF REVIEW</u>**

Summary judgment is appropriate when a court finds that there is no genuine issue as to any material facts, such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the moving party, Defendants bear the burden of showing that there is no genuine issue of material fact. *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). A "material fact" is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement being no genuine issue of material fact." *Id*. at 247–48.

Once Defendants meet this burden, Plaintiff, as the non-moving party, may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. FED. R. CIV. P. 56(e); *Id*. at 248 (noting party opposing properly supported motion for summary judgment must set forth specific facts showing there is a genuine issue for trial). When considering a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of Plaintiff as the non-moving party. *Id*. at 255. Plaintiff may not, however, rest on his pleadings and must present "significant probative evidence" demonstrating

Defendants are not entitled to summary judgment. *Id*. at 249; *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) ("[T]he nonmoving party may not rest upon mere conclusory allegations or denials must set forth 'concrete particulars' showing that a trial is needed.") (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).  Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV.   <u>LEGAL ARGUMENT</u>

### A.   <u>Defendant Bellavance Is Entitled To Summary Judgment on Plaintiff's Claims</u>

Plaintiff brings claims against Defendant Sergeant Jason Bellavance for: 1.) Violating Plaintiff's Fourth Amendment rights by using excessive force against him; 2.) Assault; 3.) Battery; 4.) Intentional infliction of emotional distress; and 5.) Gross negligence.  Plaintiff brings these claims against Defendant Bellavance in both his official capacity as a police officer for the City of Burlington and in his individual capacity.  Since no genuine issue of material fact exists as to any claim against him, Defendant Bellavance is entitled to summary judgment on all of Plaintiff's claims.

> 1.   <u>Defendant Bellavance's Conduct Did Not Violate Plaintiff's Fourth Amendment Rights, and Defendant Bellavance Is Protected by Qualified Immunity</u>

Plaintiff brings a claim against Defendant Bellavance, pursuant to 42 U.S.C. § 1983, alleging Defendant Bellavance used excessive force against Plaintiff in violation Plaintiff's Fourth Amendment right to be free from illegal and unreasonable seizure.  As this Court has explained, the "[a]nalysis of an excessive force claim against law enforcement officers involves two steps." *Davis v. Brouillette*, 349 F. Supp. 2d 847, 850 (D. Vt. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "First, the court must consider whether the officers' conduct violated

a constitutional right." *Id.* If the court concludes no constitutional right was violated, no further analysis is necessary. *Id.* "If a constitutional violation occurred, however, the court must conduct a qualified immunity analysis." *Id.*

Here, Defendant Bellavance did not violate Plaintiff's Fourth Amendment rights by pushing Plaintiff. Additionally, even if the Court were to conclude Defendant Bellavance violated Plaintiff's Fourth Amendment rights by pushing him, Defendant Bellavance is entitled to qualified immunity.

a. *Defendant Bellavance Did Not Violate Plaintiff's Fourth Amendment Rights by Pushing Plaintiff*

The United States Supreme Court has provided guidance that is apt in this matter: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396–97, (1989) (internal citation and quotation marks omitted). The ultimate question for a court considering whether an officer's use of force violated the Fourth Amendment is whether the use of force was reasonable under the circumstances. *Id.* at 396. The Supreme Court has explained that in determining the reasonableness of an officer's use of force, a court must acknowledge the reality police officers face:

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id.* at 396-97; *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham* approvingly).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490

U.S. at 396 (internal quotation marks in original).  Reasonableness is to be assessed "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation."  *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002); *see also Brayshaw v. City of Burlington*, No. 5:13-CV-253, 2015 WL 1523019, at *8 (D. Vt. Apr. 3, 2015) (noting relevance of factual information provided to officer).

As this Court has acknowledged, there is "no requirement that an officer use the least amount of force necessary" in a given situation.  *Bettis v. Bean*, No. 5:14-CV-113, 2015 WL 5725625, at *11 (D. Vt. Sept. 29, 2015).  Determining whether an officer's use of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Davis*, 349 F. Supp. 2d at 850–51 (quoting *Graham*, 490 U.S. at 396); *Tracy*, 623 F.3d at 96 (citing *Graham* factors as controlling inquiry).

The facts and circumstances in this matter confirm Defendant Bellavance's push of Plaintiff was a reasonable use of force.  On September 9, 2018, Plaintiff drank alcohol, both before going to What Ale's You and while at What Ale's You.  SUMF at ¶¶ 2-6.  Defendant Bellavance responded to a report of a fight at What Ale's You.  *Id.* at ¶ 21.  When Defendant Bellavance arrived on the scene, a What Ale's You employee, Matthew Fay, confirmed for Defendant Bellavance that there had, in fact, been a fight in the bar.  *Id.* at ¶¶ 22-23.  Fay also informed Defendant Bellavance that Plaintiff had punched Fay in the face multiple times.  *Id.* Fay then "pointed [Defendant Bellavance] up the street to [Plaintiff]," identifying Plaintiff as the person who had punched him.  *Id.*  As such, as Defendant Bellavance approached Plaintiff,

Defendant Bellavance knew Plaintiff had recently committed the crime of simple assault by punching Mr. Fay in the face multiple times.  *Id.* at ¶¶ 23-25.

As he moved closer to Plaintiff, Defendant Bellavance saw Plaintiff "actively arguing with [Sinan Eran]," the owner of What Ale's You.  *Id.* at ¶ 25.  Defendant Bellavance heard Plaintiff yelling at Mr. Eran and noted Plaintiff seemed to be the aggressor in the confrontation. *Id.* at ¶¶ 25, 27.  It appeared to Defendant Bellavance "like there was about to be another fight . . . ."  *Id.* at ¶ 29.  Against that background, Defendant Bellavance pushed Plaintiff with "a reasonable amount of force to try to separate [Plaintiff] who [had been] identified as assaulting [Mr. Fay] and appeared to be actively agitated, yelling at, and about to assault [Mr. Eran]."  *Id.* at ¶ 30.  After he was pushed by Defendant Bellavance, Plaintiff fell backward and into a wall.  *Id.* at ¶ 32.

Two of the three *Graham* factors indicate Defendant Bellavance's use of force was reasonable here.  *See* 490 U.S. at 396.  With respect to the severity of the crime at issue, Defendant Bellavance was aware Plaintiff had recently punched Mr. Fay in the face, committing the crime of simple assault.  Plaintiff was subsequently arrested for simple assault, disorderly conduct, and resisting arrest.  With respect to whether Plaintiff posed an immediate threat to the safety of others, Defendant Bellavance noted Plaintiff – the perpetrator of a recent assault who was actively agitated and yelling at Mr. Eran – appeared poised to assault Mr. Eran as well. While Plaintiff was not resisting or fleeing arrest, he had recently committed an assault and appeared poised to commit a second assault, making Defendant Bellavance's use of force, a push to separate Plaintiff from Mr. Eran, reasonable based on the circumstances.

There does not appear to be Second Circuit authority addressing the reasonableness of an officer's push of an assailant who appears poised to commit a second assault.  The cases in

which the Second Circuit has found potential Fourth Amendment violations for an officer's push, however, involve conduct markedly different than Defendant Bellavance's conduct here.  *See*, *e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108-10 (2d Cir. 2004).  For example, the plaintiff in *Maxwell*, a female college student of slight stature, was arrested after allegedly hitting a club bouncer over the head with her backpack.  *Id.* at 108.  After handcuffing the plaintiff, the arresting officer pushed the plaintiff into the back of his patrol car, causing the plaintiff to strike her head on the car's partition.  *Id*.  Defendant Bellavance's push here, which was necessary to separate Plaintiff from Mr. Eran and prevent a potential second assault, looks far different than the defendant's unnecessary push of the subdued, handcuffed plaintiff in *Maxwell*.  *See id*.

Plaintiff is likely to argue Defendant Bellavance could have used a lesser amount of force to separate Plaintiff from Mr. Eran.  That argument is unavailing, as Defendant Bellavance was not required to use the least amount of force available to him.  *See Bettis*, 2015 WL 5725625 at *11.  The question is not whether Defendant Bellavance could have used less force, but whether the amount of force Defendant Bellavance used was reasonable. *See id.*  It was.

Plaintiff is also likely to conflate Defendant Bellavance's push of Plaintiff with Plaintiff subsequently falling backward into a nearby wall.  That argument is unavailing as well, as the Supreme Court has recognized "the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct."  *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citation omitted) (internal quotation marks in original).  As such, the question here is whether Defendant Bellavance's push – and push alone – of Plaintiff was a reasonable use of force.

Ultimately, this case presents the precise potential pitfall – losing sight of the fact police officers are required to make split-second judgments in tense, dynamic situations – the Supreme

Court warned courts against in *Graham*.  490 U.S. at 396-97.  When Defendant Bellavance encountered Plaintiff in the early-morning hours of September 9, 2018, Plaintiff had just assaulted Mr. Fay by punching him in the face multiple times, had positioned himself chest-to-chest with Mr. Eran, was yelling in Mr. Eran's face, and appeared ready to assault Mr. Eran. Regardless of how Plaintiff attempts to characterize Defendant Bellavance's push now – in the calm of a judge's chambers or a lawyer's office – Defendant Bellavance's push on September 9, 2018 – in the early-morning hours, outside of a bar, with Plaintiff having just punched an individual repeatedly in the face, and with Plaintiff chest-to-chest with another individual – was an objectively reasonable use of force in the circumstances Defendant Bellavance confronted.

Accordingly, Defendant Bellavance's conduct did not violate Plaintiff's Fourth Amendment rights, such that Defendant Bellavance is entitled to summary judgment on Plaintiff's §1983 excessive force claim.

### b.  *Defendant Bellavance is Entitled to Qualified Immunity*

Even if the Court were to conclude Defendant Bellavance's conduct violated Plaintiff's Fourth Amendment rights, Defendant Bellavance would still be entitled to summary judgment on Plaintiff's § 1983 excessive force claim, as Defendant Bellavance is protected by qualified immunity.  Qualified immunity shields a police officer from claims unless the officer's actions "violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  As such, the doctrine protects an officer "from the sometimes hazy border between excessive and acceptable force . . . ." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

When a defendant asserts qualified immunity in the context of summary judgment, "a court must consider two questions: (1) whether the evidence, viewed in the light most favorable

to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be <u>clear to a reasonable officer</u> that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (emphasis added).

To be clearly established, a right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation omitted). "[Courts] do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). As such, as this Court has explained, "police officers are entitled to qualified immunity <u>unless existing precedent 'squarely governs' the specific facts at issue</u>." *Beaudry v. McKnight*, No. 2:17-CV-23, 2019 WL 1296628, at *12 (D. Vt. Mar. 21, 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)) (internal quotation marks in original) (emphasis added). This Court has concluded a police officer is entitled to qualified immunity when the officer does not have "clear notice" that his conduct is unlawful and the plaintiff "identifies no case presenting a clearly established rule" prohibiting the officer's conduct. *Leno v. Stupik*, No. 1:07-CV-163, 2008 WL 5412849, at *5 (D. Vt. Dec. 29, 2008) (internal quotation marks omitted).

Here, it would not have been clear to a reasonable officer in Defendant Bellavance's position on September 9, 2018 that pushing Plaintiff – who had just committed the crime of simple assault and appeared poised to commit another assault – violated the Fourth Amendment. Indeed, as discussed at length above, Defendant Bellavance's push did not violate the Fourth Amendment. Even if the Court concludes Defendant Bellavance's push did violate the Fourth

Amendment, Defendant Bellavance was without 'clear notice' from a 'clearly established rule' in existing statute or precedent that pushing Plaintiff would violate the Fourth Amendment. *See Leno*, 2008 WL 5412849 at *5; *Ashcroft*, 563 U.S. at 741.

As noted above, there does not appear to be Supreme Court or Second Circuit precedent addressing the constitutionality of an officer's push in the chest of an individual who has committed a simple assault and appears poised to commit a second assault. *See* § (IV)(A)(1), *supra*. In the absence of "existing precedent [that] squarely governs the specific facts at issue," Defendant Bellavance is entitled to qualified immunity. *See Beaudry*, 2019 WL 1296628 at *12. As of September 9, 2018, there was no establish rule making clear, beyond debate, that it was unconstitutional for Defendant Bellavance to push Plaintiff in the chest, so Defendant Bellavance is entitled to qualified immunity for his conduct. *See Ashcroft*, 563 U.S. at 741. Since he is protected by qualified immunity, Defendant Bellavance is entitled to summary judgment on Plaintiff's §1983 excessive force claim.

    2.  <u>Defendant Bellavance's Conduct Did Not Constitute Assault, and Defendant Bellavance Is Protected by Vermont's Qualified Immunity Doctrine</u>

Plaintiff brings a claim for common law assault against Defendant Bellavance. Plaintiff cannot substantiate the elements of a claim of common law assault against Defendant Bellavance, and Vermont's qualified immunity doctrine operates to shield Defendant Bellavance from this claim.

    a.  *Defendant Bellavance's Push Was a Reasonable Use of Force and, Therefore, Not an Assault*

Under Vermont law, common law assault constitutes the threatening of an imminent touching for which the defendant has the "ability, means, and apparent intention, to carry out his threat into execution." *Wilson v. Smith*, 144 Vt. 358, 360, 477 A.2d 964, 965 (1984). When

assault is alleged against a police officer, "the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged." *Crowell v. Kirkpatrick*, 667 F.Supp.2d 391, 417 (D. Vt. 2009), *aff'd* Fed. App'x 592 (2d Cir. 2010) (quoting *Smith v. District of Columbia*, 882 A.2d 778, 788 (D.C. 2005)). "Police officers are privileged to used force in arresting a suspect, but the privilege ends 'when the force used is excessive, which is determined by using the same standards used to analyze a Fourth Amendment excessive force claim.'" *Burwell v. Peyton*, 131 F. Supp. 3d 268, 299 (D. Vt. 2015) (quoting *Mayo v. Winn*, No. S0952-05 CnC, 2009 WL 8103582 (Vt. Super. Ct. May 14, 2009)).

Here, as discussed at length above, Defendant Bellavance's push of Plaintiff – who had just punched an individual in the face multiple times, who had positioned himself chest-to-chest with another individual, and who appeared ready to assault that individual as well – did not violate the Fourth Amendment. *See* § (IV)(A)(1)(a), *supra*. Since Defendant Bellavance's push of Plaintiff did not violate the Fourth Amendment, Defendant Bellavance's push of Plaintiff was not an assault. *See Burwell*, 131 F. Supp. 3d. at 299. Accordingly, Defendant Bellavance is entitled to summary judgment on Plaintiff's assault claim.

b.  *Vermont's Qualified Immunity Doctrine Shields Defendant Bellavance from Plaintiff's Assault Claim*

Even if Defendant Bellavance's push of Plaintiff constituted an assault, Vermont's qualified immunity doctrine applies to shield Defendant Bellavance. "Under Vermont law '[q]ualified immunity attaches to public officials who are (1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts.'" *Brayshaw*, 2015 WL 1523019 at * 14 (quoting *Baptie v. Bruno*, 88 A.2d 1212, 1216 (Vt. 2013)). "Thus, if the official's conduct does not violate clearly-established rights of which a

reasonable person would have known, the official is protected by qualified immunity from tort liability." *Id.* (quoting *Sprague v. Nally*, 2005 VT 85, ¶ 4, 178 Vt. 222, 882 A2d. 1164).

Here, with respect to the first prong of Vermont's qualified immunity analysis, Plaintiff cannot credibly dispute that Defendant Bellavance was acting in the course of his employment with the Burlington Police Department when he pushed Plaintiff. *See Brayshaw*, 2015 WL 1523019 at * 14. As such, the first prong of the test is met.

The second prong of Vermont's qualified immunity analysis – which asks whether the official was acting in good faith – is analyzed using the federal objective good faith standard. *Leno*, 2008 WL 5412849 at *6. "Thus, if the official's conduct does not violate clearly-established rights of which a reasonable person would have known, the official is protected by qualified immunity from tort liability." *Id.* As discussed at length above, Defendant Bellavance's push of Plaintiff did not violate a clearly-established right of which a reasonable officer would have known. *See § (IV)(A)(1)(b), supra.* As such, the second prong of the test is met as well.

The third prong of Vermont's qualified immunity analysis asks whether the official was performing a discretionary, rather than a ministerial, duty. Vermont law defines "a discretionary duty as one requiring the exercise of judgment in its performance," while a ministerial duty is one "where 'nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist.'" *Leno*, 2008 WL 5412849 at *6 (quoting *Libercent v. Aldrich*, 539 A.2d 981, 984 (Vt. 1987)) (internal quotation marks in original). This Court has determined an officer's decision to place an individual in protective custody required the exercise of judgment and, as such, was a discretionary act. *Id.* Similarly, Defendant Bellavance's decision about the type of force to use to separate Plaintiff from Mr. Eran was an

exercise of judgment and, as such, was a discretionary act.  *See id.*  Defendant Bellavance was

not engaged in a ministerial act where nothing was left to his discretion.  *See id.*  Indeed,

Plaintiff's argument, at its core, is that Defendant Bellavance exercised improper judgment about

the type of force to use on Plaintiff.  As such, the third prong of the test is met as well.

 With all three prongs of the test met, Vermont law extends qualified immunity to

Defendant Bellavance to shield him from Plaintiff's assault claim.  Since he is protected by

qualified immunity, Defendant Bellavance is entitled to summary judgment on Plaintiff's assault

claim.

  3. <u>Defendant Bellavance's Conduct Did Not Constitute Battery, and Defendant<br>Bellavance Is Protected by Vermont's Qualified Immunity Doctrine</u>

 Plaintiff brings a claim for common law battery against Defendant Bellavance.  Plaintiff

cannot substantiate the elements of a claim of common law battery against Defendant

Bellavance, and Vermont's qualified immunity doctrine operates to shield Defendant Bellavance

from this claim.

  a. *Defendant Bellavance's Push Was a Reasonable Use of Force and,<br>Therefore, Not a Battery*

 "Under Vermont law, battery is an intentional act that results in harmful contact with

another." *Brayshaw*, 2015 WL 1523019 at *13 (quoting Christman v. Davis, 889 A.2d 746, 749

(Vt. 2005)) (internal quotation marks omitted).  As when assault is alleged against a police

officer, when battery is alleged against a police officer, "the inquiry is whether the officer's

conduct was reasonably necessary and thereby privileged." *Crowell v. Kirkpatrick*, 667

F.Supp.2d 391, 417 (D. Vt. 2009), *aff'd* Fed. App'x 592 (2d Cir. 2010) (quoting *Smith v. District

of Columbia*, 882 A.2d 778, 788 (D.C. 2005)).  Here, as discussed at length above, Defendant

Bellavance's push of Plaintiff – who had just punched an individual in the face multiple times,

who had positioned himself chest-to-chest with another individual, and who appeared ready to assault that individual as well – did not violate the Fourth Amendment.  *See* § (IV)(A)(1)(a), § (IV)(A)(2)(a), *supra*.  Since Defendant Bellavance's push of Plaintiff did not violate the Fourth Amendment, Defendant Bellavance's push of Plaintiff was not a battery.  *See Burwell*, 131 F. Supp. 3d. at 299.  Accordingly, Defendant Bellavance is entitled to summary judgment on Plaintiff's battery claim.

> b. *Vermont's Qualified Immunity Doctrine Shields Defendant Bellavance from Plaintiff's Battery Claim*

Even if Defendant Bellavance's push of Plaintiff constituted a battery, Vermont's qualified immunity doctrine applies to shield Defendant Bellavance.  As discussed at length above, Vermont law extends qualified immunity to Defendant Bellavance to shield him from Plaintiff's battery claim. *See* § (IV)(A)(2)(b), *supra*.   Since he is protected by qualified immunity, Defendant Bellavance is entitled to summary judgment on Plaintiff's battery claim.

> 4.  <u>Defendant Bellavance's Push of Plaintiff Does Not Constitute Intentional Infliction of Emotional Distress</u>

As there is no genuine issue of material fact as to whether Defendant Bellavance's push of Plaintiff constituted 'extreme and outrageous conduct,' and as Plaintiff cannot demonstrate Defendant Bellavance's push was done with the intention of causing severe emotional distress or with reckless disregard of the probability of causing severe emotional distress, Defendant Bellavance is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.  "Vermont law requires that a plaintiff claiming intentional infliction of emotional distress establish: (1) conduct that is extreme and outrageous, (2) conduct that is intentional or reckless, and (3) conduct that causes severe emotional distress." *Brayshaw*, 2015 WL 1523019 at *15 (quoting *Baptie v. Bruno*, 88 A.3d 1212, 1219 (Vt. 2013)) (internal quotation marks

omitted).  The plaintiff must demonstrate "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Baptie*, 88 A.3d at 1219 (quoting *Colby v. Umbrella, Inc.*, 955 A.2d 1082, 1089 (Vt. 2008)).  This Court has explained the plaintiff carries a "heavy burden" in needing to show conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Brayshaw*, 2015 WL 1523019 at *15 (quoting *Cate v. City of Burlington*, 79 A.3d 854, 863 (Vt. 2013)).

Here, Plaintiff's intentional infliction of emotion distress claim fails, first, because there is no genuine issue of material fact as to whether Defendant Bellavance's push of Plaintiff was conduct 'so outrageous in character and so extreme in degree' that it exceeded the bounds of a decent civilization and should be regarded 'as atrocious and utterly intolerable.'  *See id.*  On the contrary, Defendant Bellavance's push of Plaintiff was a reasonable response to the circumstances Defendant Bellavance confronted in the early-morning hours of September 9. Plaintiff had been consuming alcohol, had punched Mr. Fay in the face multiple times, had positioned himself chest-to-chest with Mr. Eran, and appeared poised to assault Mr. Eran as well. There was nothing unreasonable – let alone outrageous, atrocious, or utterly intolerable – about Defendant Bellavance pushing Plaintiff in the chest to separate him from Mr. Eran.  *See Brayshaw*, 2015 WL 1523019 at *15.  As no rational jury could conclude Defendant Bellavance's conduct rose to the extreme and outrageous level necessary to sustain a claim for intentional infliction of emotional distress, Plaintiff cannot sustain a claim for intentional infliction of emotion distress.  *See id.* (granting summary judgment on IIED claim).

Plaintiff's IIED claim fails, second, because there is no factual basis upon which a jury could find Defendant Bellavance acted "intentionally [to cause emotional distress] or with reckless disregard of the probability of causing emotional distress," as required to substantiate an IIED claim. *See Baptie*, 88 A.3d at 1219. Even if Defendant Bellavance's push of Plaintiff could be considered outrageous, which it cannot, Plaintiff has identified no evidence indicating Defendant Bellavance pushed Plaintiff with an intent to cause Plaintiff emotional distress or with reckless disregard of the probability of causing Plaintiff emotional distress. On the contrary, the only evidence in the record indicates Defendant Bellavance pushed Plaintiff with the intent of preventing Plaintiff from committing further violence. *See* SUMF at ¶ 30.

Accordingly, Defendant Bellavance is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

### 5. Defendant Bellavance's Push of Plaintiff Does Not Constitute Gross Negligence

There is no genuine issue of material fact as to whether Defendant Bellavance's push of Plaintiff constituted gross negligence. Under Vermont law, gross negligence is "conduct which involve[s] a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b)(2). To establish a claim of gross negligence, a plaintiff must demonstrate duty, breach, causation, and damages. *Fortunati v. Campagne*, 681 F. Supp. 2d 528, 544 (D. Vt. 2009). The Vermont Supreme Court has explained gross negligence "amounts to a failure to exercise even a slight degree of care" and requires "'more than an error of judgment, momentary inattention, or loss of presence of mind." *Rivard v. Roy,* 196 A.2d 497, 500 (Vt. 1963) (citation omitted). "A plaintiff must provide facts that demonstrate that an individual defendant heedlessly and palpably violated a legal duty owed to plaintiff." *Fortunati v. Campagne*, 681 F. Supp. 2d 528, 544–45 (D. Vt. 2009).

This Court has recognized that even when police officers make "a few questionable decisions," forego "some perhaps preferable alternatives," and employ "a generally force-oriented approach," they do not engage in the "wholesale abdication of care required for gross negligence." *Id.* at 545. It is appropriate for a court to resolve a gross negligence claim on summary judgment "if reasonable persons cannot differ on the question of whether the facts meet the legal standard." *Id.* (citation omitted).

Here, Plaintiff's pleadings allege Defendant Bellavance owed Plaintiff "a duty of care as a citizen and as a potential victim of an assault." Dkt. No. 21 at ¶ 59. Assuming for purposes of this Motion that such a duty exists, there is no genuine issue of material fact as to whether Defendant Bellavance 'heedlessly and palpably' violated that duty. *See Fortunati*, 681 F. Supp. 2d at 544-45. First, as discussed above, Defendant Bellavance's push of Plaintiff was a reasonable response to the circumstances Defendant Bellavance confronted in the early-morning hours of September 9. Plaintiff had been consuming alcohol, had punched Mr. Fay in the face multiple times, had positioned himself chest-to-chest with Mr. Eran, and appeared poised to assault Mr. Eran as well. Defendant Bellavance's decision to push Plaintiff in the chest to separate him from Mr. Eran was not even unreasonable, let alone the 'wholesale abdication of care required for gross negligence.' *See Fortunati*, 681 F. Supp. 2d at 545. Further, even if Defendant Bellavance made a questionable decision in pushing Plaintiff, forewent a preferable alternative in pushing Plaintiff, and/or used a force-oriented approach when he pushed Plaintiff – none of which Defendant Bellavance actually did – this Court has recognized such conduct does not amount to gross negligence. *See id.*

Against this background, reasonable persons could not differ on the question of whether Defendant Bellavance's push of Plaintiff constituted gross negligence. It did not. Accordingly, Defendant Bellavance is entitled to summary judgment on Plaintiff's gross negligence claim.

  6. <u>Official Capacity Claims</u>

Plaintiff brings claims against Defendant Bellavance in his official capacity as well. The Supreme Court has explained "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted). Accordingly, a suit against a municipal official in his or her official capacity should be treated as a suit against the municipality itself. *See id.*; *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (recognizing claim against village's police officers in their official capacity was "essentially a claim against the village . . . ."). When a government official is sued in their official capacity, the real party in interest is the governmental entity employing the official, not the official themselves. *Hafer*, 502 U.S. at 25.

Here, then, Plaintiff's claims against Defendant Bellavance in his official capacity are actually claims against Defendant Burlington. *See id.*; *Curley*, 268 F.3d at 72. Defendant Bellavance is entitled to summary judgment on Plaintiff's claims against him in his official capacity on that basis alone. Were the Court to consider the claims against Defendant Bellavance in his official capacity on their substance, which the Court need not, Defendant Bellavance is still entitled to summary judgment, for the reasons set forth above and below. *See* § (IV)(A)(1)-(5), *supra*, § (IV)(B), *infra*. Accordingly, Defendant Bellavance is entitled to summary judgment on all Plaintiff's claims against him.

## B. <u>Defendant City of Burlington, Vermont Is Entitled to Summary Judgment on Plaintiff's Claims</u>

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against Defendant City of

Burlington, Vermont ("Burlington").  First, Plaintiff brings claims grounded in the Fourth Amendment, alleging Defendant Burlington failed to properly train, supervise, and/or discipline its police officers with respect to an individual's right to be free of the use of excessive force. *See* Dkt. No. 21 at ¶¶ 44, 45, 62, 67-69.  Second, Plaintiff brings claims grounded in the Fourteenth Amendment, alleging Defendant Burlington implemented and/or permitted a use of force policy that discriminated against Black people in violation of the Equal Protection Clause. *See id.*

Preliminarily, Plaintiff "may not rely on *respondeat superior* to impose liability under 42 U.S.C. § 1983."  *Leno*, 2008 WL 5412849 at *7 (citing *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Instead, Plaintiff "must show the City of [Burlington] had an official municipal policy or custom that directly resulted in deprivation of a constitutional right."  *Id.*; *Flanigan v. Town of Colchester*, 171 F. Supp. 2d 361, 367 (D. Vt. 2001).

An official policy is one in which "a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Flanigan*, 171 F. Supp. 2d at 367.  A custom is a practice that while not authorized by written law, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Id.* (internal quotation marks in original).  As there are no genuine issues of fact regarding Plaintiff's inability to make these showings for his claims against Defendant Burlington, Defendant Burlington is entitled to summary judgment.

1.  <u>There Are No Genuine Issues of Material Fact with Respect to Plaintiff's Fourth Amendment Claim Against Defendant Burlington</u>

Plaintiff claims Defendant Burlington failed to properly train, supervise, and/or discipline its police officers with respect to Fourth Amendment rights.  Preliminarily, Plaintiff's failure to train, supervise, and/or discipline claim against Defendant Burlington fails because Defendant

Bellavance did not violate Plaintiff's Fourth Amendment rights.  As this court has explained, "a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights."  *Brayshaw*, 2015 WL 1523019 at *16 (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir.2001)).  As discussed at length above, Defendant Bellavance's push of Plaintiff did not violate the Fourth Amendment.  *See* § (IV)(A)(1)(a), *supra*.  Since Plaintiff's Fourth Amendment claim against Defendant Bellavance fails, Plaintiff's failure to train, supervise, and/or discipline claim against Defendant Burlington must fail as well.  *See Brayshaw*, 2015 WL 1523019 at *16.  Accordingly, Defendant Burlington is entitled to summary judgment on Plaintiff's failure to train, supervise, and/or discipline claim.

Even if the Court determines Defendant Bellavance's push of Plaintiff violated the Fourth Amendment, Defendant Burlington is still entitled to summary judgment on Plaintiff's failure to train, supervise, and/or discipline claim.  A municipality is liable for failing to train, supervise, and/or discipline its employees only when the municipality's failure amounts to "deliberate indifference."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 in cases of police brutality where the city's failure to supervise or discipline its officers amounts to a policy of deliberate indifference.").  In assessing whether deliberate indifference exists, a court must determine "whether the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather than mere negligence."

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (internal quotation marks in original).

In addition to establishing deliberate indifference on the part of a municipality, the plaintiff bringing a failure to train, supervise, and/or discipline claim must also "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Id.* at 129 (quoting *City of Canton*, 489 U.S. at 387-90) (internal quotation marks in original); *see also Leno* 2008 WL 5412849, at *8 ("The Second Circuit has applied the stringent causation and culpability requirements set out in City of Canton to supervisory claims as well."). A plaintiff bringing a failure to train, supervise, and/or discipline claim cannot simply rely on the fact officers allegedly used excessive force as proof of an inadequate training program. *Amnesty Am.*, 361 F.3d at 130 ("[T]he factfinder's inferences of inadequate training and causation [must] be based on more than the mere fact that the misconduct occurred in the first place.").

This Court considered failure to train and failure to supervise claims in *Leno*. 2008 WL 5412849, at *9. In granting summary judgment on the plaintiff's failure to train claim, the Court noted the plaintiff had "not identified any deficiency in the [municipality's] training program that actually caused his injury." *Id.* In granting summary judgment on the failure to supervise claim as well, the Court noted the plaintiff had "not identified any obvious or severe deficiencies in the [municipality's] supervision." *Id.*

Here, Plaintiff's failure to train, supervise, and/or discipline claim against Defendant Burlington have the same fatal flaws as the plaintiff's claims in *Leno*. 2008 WL 5412849, at *9. Plaintiff has produced no evidence whatsoever of a specific deficiency in the training program Defendant Burlington provides to its officers with respect to use of force. *See id.*; *Amnesty Am.*,

361 F.3d at 129.  Not having identified a specific deficiency in Defendant Burlington's training, supervision, or discipline programs, Plaintiff cannot, of course, establish a causal connection between the deficiency and his injury.  Having failed to identify a specific deficiency in Defendant Burlington's training, supervision, and/or discipline, and having failed to establish a causal connection between that deficiency and his injury, Plaintiff's failure to train, supervise, and/or discipline claim cannot succeed.  *See id.*

Additionally, Plaintiff has failed to produce any evidence suggesting deliberate indifference by Defendant Burlington with respect to deficiencies in the training, supervision, and/or discipline provided to officers of the Burlington Police Department.  Plaintiff makes conclusory assertions about a "pattern of behavior" in the Burlington Police Department and references another use of force incident, but Plaintiff provides no evidentiary basis for a fact finder to conclude Defendant Burlington was deliberately indifferent to apparent problems with its training and/or supervision of police officers with respect to use of force.  *See* Dkt. No. 21 at ¶¶ 67-70.  That is, Plaintiff provides no evidence suggesting Defendant Burlington made a 'conscious choice' to not attend to deficiencies in its training, supervision, or discipline of officers with respect to use of force.  *See Amnesty Am.*, 361 F.3d at 128.  As a result, Plaintiff's failure to train, supervise, and/or discipline claim must fail.  *See id.*

Ultimately, Plaintiff's failure to train, supervise, and discipline claim does nothing more than make the conclusory assertion that there must be a problem with Defendant Burlington's training, supervision, and/or discipline of police officers because – in Plaintiff's view – there is a problem with the way Defendant Burlington's police officers use force.  This is precisely the line of argument the Supreme Court, the Second Circuit, and this Court have deemed insufficient to sustain a failure to train, supervise, and/or discipline claim.  *See City of Canton*, 489 U.S. at 387-

90; *Amnesty Am.*, 361 F.3d at 129; *Leno*, 2008 WL 5412849, at *9.  As Plaintiff has failed to

show deliberate indifference on the part of Defendant Burlington, has failed to identify a specific

deficiency in Defendant Burlington's training, supervision, and/or discipline, and has failed to

connect that specific deficiency to Plaintiff's alleged injury, Defendant Burlington is entitled to

summary judgment on Plaintiff's failure to train, supervise, and discipline claims.

> 2.  <u>There Are No Genuine Issues of Material Fact with Respect to Plaintiff's
>     Fourteenth Amendment Claims Against Defendant Burlington</u>

Plaintiff claims Defendant Burlington's use of force policy has a disparate impact on

people of color and discriminated against him based on his race.  *See* Dkt. No. 21 at ¶¶ 68-74.

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a

government actor <u>intentionally</u> discriminated against him on the basis of his race."  *Brown v.

City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (emphasis added).  To demonstrate

intentional discrimination in violation of the Equal Protection Clause, a plaintiff may "point to a

law or policy that "expressly classifies persons on the basis of race[,]" "identify a facially neutral

law or policy that has been applied in an intentionally discriminatory manner," and/or "allege

that a facially neutral statute or policy has an adverse effect and that it was motivated by

discriminatory animus."  *Id.* (citations omitted).  Plaintiff does not allege Defendant Burlington's

use of force policy expressly classifies individuals based on race, so Plaintiff's claim must either

show the use of force policy "has been applied in an intentionally discriminatory manner" and/or

"has an adverse effect and that it was motivated by discriminatory animus."  *Id.*

> a.  *There Is No Evidence Defendant Burlington's Use of Force Policy
>      Was Applied in an Intentionally Discriminatory Manner*

Plaintiff cannot demonstrate Defendant Burlington's use of force policy has been applied

in an intentionally discriminatory manner.  To establish an equal protection violation based on selective enforcement of this nature, a plaintiff must show "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race . . . ."  *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) (citation omitted).  "[A] showing that the plaintiff was treated differently compared to others similarly situated is a 'prerequisite' and a 'threshold matter' to a selective enforcement claim."  *Bey v. City of New York*, 210 F. App'x 50, 53 (2d Cir. 2006) (alteration and internal quotation marks in original).

Here, Plaintiff does not even allege, let alone provide an evidentiary basis for a factfinder to conclude, that he was <u>intentionally</u> discriminated against based on his race.  Plaintiff's failure to allege intentional discrimination against him is an adequate basis for granting summary judgment on Plaintiff's claim.  *See Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) (noting, in affirming dismissal, that claim for violation of Equal Protection clause requires "that intentional discrimination be alleged in a non-conclusory fashion.").  Having not even alleged he was intentionally discriminated against based on his race, it is unsurprising that Plaintiff has produced no evidence demonstrating he was intentionally discriminated against based on his race.  *See id.*  Nor has Plaintiff identified any evidence from which a fact finder could conclude Plaintiff was treated differently than a similarly situated individual of a different race.  *See Lisa's Party City, Inc.*, 185 F.3d at 16.  Indeed, Plaintiff has identified no evidence of treatment of similarly situated individuals whatsoever.  With Plaintiff having failed to make these required, threshold showings, there is no genuine issue of material fact regarding Plaintiff's selective treatment equal protection claim. Accordingly, Defendant Burlington is entitled to summary judgment on that claim.

b.  *There Is No Evidence Defendant Burlington's Use of Force Policy Had an Adverse Impact and Was Motivated by Discriminatory Intent*

Plaintiff cannot demonstrate Defendant Burlington's use of force policy had an adverse impact or that Defendant Burlington's was motivated by discriminatory intent in adopting or maintaining the policy.  Disproportionate impact can be relevant to an equal protection claim, but "to violate the Fourteenth Amendment the disproportionate impact must be traced to a <u>purpose</u> to discriminate on the basis of race."  *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (citation omitted) (emphasis in original).  As direct evidence of discriminatory intent is rarely available, equal protection plaintiffs often point to statistics as circumstantial evidence of discriminatory intent.  *See*, *e.g.*, *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015).  For statistical evidence to demonstrate discriminatory intent in an equal protection case, however, "the statistics must not only be statistically significant in the mathematical sense, but they must also be of a level that makes other plausible non-discriminatory explanations very unlikely."  *Id.*; *see also Castaneda v. Partida*, 430 U.S. 482, 496 n.17 (1977) (noting variance of "two or three standard deviations" would be statistically significant).  Unless "a clear pattern, unexplainable on grounds other than race, emerges," a plaintiff cannot rely on the disparate impact of a policy, alone, to prove discriminatory intent.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).  Instead, the plaintiff must point to other sources of circumstantial evidence – the historical background of the challenged policy, departures from the normal procedural sequence in adopting the policy, or the legislative and administrative history for the policy, for example – to demonstrate discriminatory intent.  *Id.* at 267-68.

Here, Plaintiff has identified no evidentiary basis for a fact finder to use to conclude Defendant Burlington's use of force policy had a discriminatory impact or was motivated by discriminatory intent.  With respect to discriminatory impact, Plaintiff has identified no direct

evidence of discriminatory purpose by Defendant Burlington. *See Hayden v. Paterson*, 594 F.3d at 163. A reference in Plaintiff's Amended Complaint to statistics compiled by Defendant Burlington that allegedly "show that black persons are disproportionately represented in the pool of suspects who had force used against them" suggests Plaintiff will attempt to rely on statistical evidence to demonstrate intent on the part of Defendant Burlington in support his equal protection claim. Dkt. No. 21 at ¶ 73.

Preliminarily, Plaintiff cannot lay the foundation necessary to have statistics compiled by Defendant Burlington admitted as evidence. Procedurally, Plaintiff has not identified a witness qualified to provide expert opinion testimony regarding statistics compiled by Defendant Burlington. *See*, *e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 540, 577 (S.D.N.Y. 2013) (discussing reasons witness was not qualified to testify as expert regarding statistics). Nor has Plaintiff established the statistics compiled by Defendant Burlington meet the criteria necessary for a fact finder to rely upon those statistics in concluding they demonstrate discriminatory intent. *See id.* at 585 (discussing ways statistical analysis must be tailored to serve as basis for finding of discriminatory purpose). Substantively, Plaintiff has not established the statistics compiled by Defendant Burlington reflect a disparate impact of a magnitude sufficient for a fact finder to conclude discrimination is producing the disparate impact. *See Burgis*, 798 F.3d at 69; *Castaneda*, 430 U.S. at 496 n.17.

Ultimately, Plaintiff is without any evidence that Defendant Burlington selectively applied its use of force policy, that Defendant Burlington's use of force policy had a disparate impact, or that Defendant Burlington had discriminatory intent in adopting or maintaining its use of force policy. Without that evidence, Plaintiff cannot sustain a claim against Defendant Burlington for a violation of the Fourteenth Amendment's Equal Protection Clause. As there is

no genuine issue of material fact regarding Plaintiff's equal protection claim, Defendant

Burlington is entitled to summary judgment on that claim.

**C.  Defendant Brandon del Pozo Is Entitled To Summary Judgment on Plaintiff's Claims**

Plaintiff brings claims against Defendant del Pozo in his official capacity as former Chief

of Police for Defendant Burlington and in his individual capacity.  Defendant del Pozo is entitled

to summary judgment on all Plaintiff's claims against him, which are partially duplicative of

Plaintiff's claims against Defendant Burlington and entirely without genuine issues of material

fact.

1.  Official Capacity Claims Against Defendant del Pozo

Plaintiff's claims against Defendant del Pozo in his official capacity as the former Chief

of Police for the Burlington Police Department are the functional equivalent of Plaintiff's claims

against Defendant Burlington.  Defendant del Pozo is entitled to summary judgment on those

claims, just as Defendant Burlington is entitled to summary judgment on Plaintiff's claims

against it.

The Supreme Court has explained "official capacity suits generally represent only

another way of pleading an action against an entity of which an officer is an agent."  *Hafer v.

Melo*, 502 U.S. 21, 25 (1991) (citation omitted).  Accordingly, a suit against a municipal official

in his or her official capacity should be treated as a suit against the municipality itself.  *See id*.;

*Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (recognizing claim against village's

police officers in their official capacity was "essentially a claim against the village . . . .").  When

a government official is sued in their official capacity, the real party in interest is the

governmental entity employing the official, not the official themselves.  *Hafer*, 502 U.S. at 25.

Here, Plaintiff's claims against Defendant del Pozo in his official capacity are duplicative of Plaintiff's claims against Defendant Burlington. That, alone, entitles Defendant del Pozo to summary judgment on Plaintiff's claims against him in his official capacity. *See id.*; *Curley*, 268 F.3d at 72. Even if the Court were to consider Plaintiff's claims against Defendant del Pozo in his official capacity on the merits, which the Court need not, Defendant del Pozo is entitled to summary judgment on Plaintiff's claims for the same reasons Defendant Burlington is entitled to summary judgment on Plaintiff's claims. *See* § (IV)(B), *supra*. In short, there are no genuine issues of material fact as to Plaintiff's failure to train, supervise, and/or discipline claim against Defendant Burlington and Defendant del Pozo in his official capacity, and no genuine issue of material fact as to Plaintiff's equal protection claim. *See id.* Accordingly, Defendant del Pozo is entitled to summary judgment on Plaintiff's claims against him in his official capacity.

2. <u>Individual Capacity Claims Against Defendant del Pozo</u>

Plaintiff cannot sustain his claims against Defendant del Pozo in his individual capacity. An individual capacity suit seeks to "impose individual liability upon a government official for actions taken under color of state law." *Hafer*, 502 U.S. at 25. A plaintiff bringing an individual capacity suit pursuant to § 1983 must demonstrate "the official, acting under color of state law, caused the deprivation of a federal right." *Id.*

When a plaintiff brings a claim for a supervisor's failure to train, supervise, or discipline, the "plaintiff must plausibly allege defendant's <u>personal involvement</u> in the alleged constitutional violation." *Grega v. Pettengill*, 123 F. Supp. 3d 517, 554 (D. Vt. 2015) (emphasis added).

To demonstrate a supervisor's personal involvement, a plaintiff must allege that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference . . . by failing to act on information
> indicating that unconstitutional acts were occurring.

*Id.* (alteration in original).

Here, Plaintiff appears to bring individual capacity claims against Defendant del Pozzo for: 1.) Violating Plaintiff's Fourth Amendment right by using excessive force against him on September 9, 2018; 2.) Failing to properly train, supervise, and/or discipline officers of the Burlington Police Department with respect to Fourth Amendment rights; and 3.) Discriminating against Plaintiff in violation of the Fourteenth Amendment's Equal Protection Clause.  All of Plaintiff's claims fail.

### a. *Defendant del Pozo Did Not Use Excessive Force Against Plaintiff*

Plaintiff cannot sustain an excessive use of force claim against Defendant del Pozo because Defendant del Pozo was not involved with the use of force against Plaintiff on September 9, 2018.  Plaintiff has no evidence that Defendant del Pozo, acting under color of state law, deprived Plaintiff of his Fourth Amendment rights by using excessive force against him on September 9.  *See Hafer*, 502 U.S. at 25.  Only Defendant Bellavance used force against Plaintiff on September 9.  As such, there is no genuine issue of material fact as to Plaintiff's claim that Defendant del Pozo, acting in his individual capacity, violated Plaintiff's Fourth Amendment rights, and Defendant del Pozo is entitled to summary judgment on that claim.

### b. *Defendant del Pozo Did Not Fail to Properly Train, Supervise, and/or Discipline Officers in Violation of Plaintiff's Fourth Amendment Rights*

First, Plaintiff has identified no evidence demonstrating personal involvement by

Defendant del Pozo in causing Plaintiff's alleged injuries. As discussed above, Defendant del Pozo had no involvement with the use of force, which was reasonable, against Plaintiff during his arrest on September 9, 2018. *See Grega*, 123 F. Supp. 3d at 554.

Second, Plaintiff has identified no evidence suggesting Defendant del Pozo was aware of Fourth Amendment violations by officers of the Burlington Police Department and failed to remedy the wrong. *See id.* On the contrary, the evidence of record shows Defendant del Pozo and Defendant Burlington, in this case and others, investigated complaints regarding excessive use of force and, when appropriate, disciplined officers for violating Burlington Police Department policy. *See* SUMF at ¶¶ 36-38. Defendant Bellavance was, for example, disciplined for his conduct in this matter, notwithstanding the fact his conduct did not rise to the level of a Fourth Amendment violation. *Id.*

Third, Plaintiff has produced no evidence that Defendant del Pozo created an environment in which Fourth Amendment violations occurred or permitted an environment in which Fourth Amendment violations occurred to exist. *See Grega*, 123 F. Supp. 3d at 554. Plaintiff has identified no evidence, beyond his conclusory assertions and implications, that the Burlington Police Department was plagued by Fourth Amendment violations. As discussed above, Plaintiff has neither alleged nor substantiated a single specific flaw in Defendant del Pozo's or Defendant Burlington's training, supervision, and discipline programs.

Fourth, Plaintiff has produced no evidence Defendant del Pozo was grossly negligent in supervising Defendant Bellavance. Again, Plaintiff has neither alleged nor substantiated a single specific flaw in Defendant del Pozo's or Defendant Burlington's supervision program. The evidence of record is that Defendant del Pozo investigated the alleged Fourth Amendment violations in this matter and in other similar matters. It is insufficient for Plaintiff to make the

conclusory assertion that – in his view – a Fourth Amendment violation occurred here, which means Defendant del Pozo must have been grossly negligent in supervising Defendant Bellavance.

Fifth, Plaintiff has produced no evidence Defendant del Pozo exhibited deliberate indifference by failing to act on evidence that Fourth Amendment violations were occurring. There is no evidence a Fourth Amendment violation occurred – in this incident or in any other incident – and went ignored by Defendant del Pozo.  Again, on the contrary, the evidence of record is that Defendant del Pozo and Defendant Burlington investigated excessive force complaints against officers and, when appropriate, issued discipline.

In sum, Plaintiff has produced no evidence whatsoever that Defendant del Pozo had personal involvement with the failure to train, supervise, and/or discipline officers in the Burlington Police Department with respect to individuals' Fourth Amendment rights.  *See Grega*, 123 F. Supp. 3d at 554.  This fits with the absence of any evidence that Defendant Burlington failed to train, supervise, and/or discipline officers with respect to Fourth Amendment rights.  *See* § (IV)(B)(1), *supra*.  Since Plaintiff has not established an evidentiary basis for a fact finder to conclude Defendant del Pozo, in his individual capacity, violated Plaintiff's Fourth Amendment rights by failing to properly train, supervise, and/or discipline members of the Burlington Police Department, Defendant del Pozo is entitled to summary judgment on this claim.

c.   *Defendant del Pozo Did Not Violate Plaintiff's Fourteenth Amendment Rights*

Plaintiff has identified no evidence demonstrating Defendant del Pozo intentionally discriminated against Plaintiff on the basis of Plaintiff's race in violation of the Fourteenth Amendment's Equal Protection Clause.  Plaintiff's equal protection claim against Defendant del

Pozo in his individual capacity has the same fatal flaws as Plaintiff's equal protection claim against Defendant Burlington. *See* § (IV)(B)(2), *supra*. In short, Plaintiff is entirely without evidence that Defendant del Pozo had a discriminatory motive in adopting or maintain the Burlington Police Department's use of force policy, that Defendant del Pozo selectively enforced the use of force policy, or that the use of force policy had a disparate impact on Black people. *See id*. Without that evidence, Plaintiff cannot sustain a claim against Defendant del Pozo in his individual capacity for violating Plaintiff's Fourteenth Amendment rights. Accordingly, Defendant del Pozo is entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim.

## V.     CONCLUSION

Sergeant Jason Bellavance used force against Plaintiff on September 9, 2018 when Plaintiff, who had had just assaulted an individual by repeatedly punching him in the face, positioned himself chest-to-chest with another individual and appeared poised to commit a second assault. Plaintiff may try to use the current calm of litigation to cast Sergeant Bellavance's push in a different light, but the fact remains that on September 9, 2018, Sergeant Bellavance encountered Plaintiff at the conclusion of one assault and at the apparent precipice of a second. In those tense, dynamic circumstances – which the Supreme Court has explicitly cautioned against losing sight of – Sergeant Bellavance's push of Plaintiff was an objectively reasonable use of force. There is no evidence supporting that the push was an act of brutality or discrimination.

In the end, Plaintiff is without evidence that the use of force against him on September 9, 2018 was unreasonable, unlawful, or discriminatory. Defendants violated none of Plaintiff's rights on September 9, 2018. As there are no genuine issues of material fact as to any of

Plaintiff's claims, Defendants respectfully submit they are entitled to summary judgment on

Plaintiff's claims.

   Dated at Burlington, Vermont this 1st day of July, 2021.

            JASON BELLAVANCE, CITY OF
            BURLINGTON, VERMONT, &
            BRANDON DEL POZO

By:  */s/ Pietro J. Lynn*
   Pietro J. Lynn, Esq.
   Lynn, Lynn, Blackman & Manitsky, P.C.
   *Counsel for Defendants*
   76 St. Paul St., Suite 400
   Burlington, VT  05401
   (802) 860-1500
   plynn@lynnlawvt.com