IN THE UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| ALBIN MELI, *et al.*            ) | |
|         Plaintiffs,   ) | |
| v.                             ) | Civil Action No. 2:19–CV–71 |
| CITY OF BURLINGTON, VERMONT, ) *et al.*,                       ) | |
|         Defendants.   ) | |

**DEFENDANT CITY OF BURLINGTON, VERMONT'S, DEFENDANT BRANDON DEL POZO'S, AND DEFENDANT JASON BELLAVANCE'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON <u>PLAINTIFF JEREMIE MELI'S CLAIMS</u>**

Defendant City of Burlington Vermont, Defendant Brandon del Pozo, and Defendant Jason Bellavance, through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, respectfully submit this Reply to Plaintiff Jeremie Meli's Opposition to Defendant City of Burlington Vermont's, Defendant Brandon del Pozo's, and Defendant Jason Bellavance's Motion for Summary Judgment ("Defendants' Motion").

**I.     INTRODUCTION**

There is a legal standard for each claim Plaintiff Jeremie Meli ("Plaintiff") brings against Defendant City of Burlington, Vermont, Defendant Brandon del Pozo, and Defendant Jason Bellavance ("Defendants").  To defeat Defendants' Motion, Plaintiff must identify evidence in the record creating a genuine issue of material fact as to each element of his claims. Plaintiff has not done so.

Plaintiff cites evidence in the record that fits the story Plaintiff seeks to tell, but Plaintiff does not cite evidence in the record sufficient to sustain his claims.  When attention is paid to what Plaintiff must prove to sustain his many claims, and when the extraneous information and

1

hyperbole Plaintiff weaves into his Opposition are ignored, it becomes clear there are no genuine issues of material fact as to Plaintiff's claims.  Ultimately, Plaintiff's Opposition fails to meaningfully address the elements of the various claims Plaintiff brings or highlight evidence demonstrating a genuine issue of material fact exists regarding those elements.

## II. LEGAL ARGUMENT

### A. The Parties Agree On Much of the Critical Factual Background

Plaintiff's Opposition confirms Plaintiff Jeremie Meli was violent in the early-morning hours of September 9, 2018.  To that end, Plaintiff's Opposition and Statement of Disputed Material Facts acknowledge Plaintiff, while drinking alcohol in What Ales You, became involved in a confrontation where Jeremie was "aggressively in another patron's face sort of yelling at him." Dkt. No. 144-2 at ¶ 12.  That confrontation escalated to a point where Jeremie's brother, Albin Meli, felt it was necessary for Albin to act as "the peacemaker" for Jeremie.  Dkt. No. 144 at 5.  Plaintiff's Opposition does not meaningfully dispute testimony from two individuals present in What Ales You that Plaintiff punched a bartender in the face multiple times during that confrontation.  *See* Dkt. No. 144-2 at ¶¶ 16-17.

Plaintiff does not, for example, deny punching a bartender in the face multiple times.  *See id.*  Nor does Plaintiff highlight testimony from a witness denying he punched a bartender in the face multiple times.  *See id.*  Plaintiff only points to testimony from his brother and Co-Plaintiff, Albin Meli, that Albin "does not understand how Jeremie Meli could be accused of coming into physical contact with the staff member." *Id.* at ¶ 17.  Albin Meli stops short, however, of denying that Plaintiff punched a bartender in the face multiple times on September 9, 2018.  *See id.*  Ultimately, then, there is no genuine dispute as to whether Plaintiff punched a bartender in

the face multiple times on September 9, 2018: Two witnesses confirm Plaintiff did exactly that. *See* Dkt. No. 131-1 at ¶¶ 16-17.

Plaintiff also does not dispute that, after leaving What Ales You, he found himself faced-off with Sinan Eren, the owner of What Ales You, on the sidewalk. *See* Dkt. No. 144-2 at ¶¶ 26-29. Plaintiff acknowledges he was less than an arm's length from Mr. Eren. *See id.* at ¶ 27 (referencing "gap of space" between Plaintiff and Eren small enough to allow Eren to "poke . . . Jeremie Meli in the chest."). Plaintiff attempts to cherry pick testimony from Nathan Bradbury – whom Plaintiff elsewhere describes in his Opposition as "an objective by-stander" – but Plaintiff does not identify evidence creating a dispute regarding Mr. Bradbury's 'objective' assessment that Plaintiff's confrontation with Mr. Eren was "angry and agitated." Dkt. No. 144 at 3 (describing Bradbury as "an objective by-stander . . . ."); Dkt. No. 144-2 at ¶ 26 (quoting additional testimony from Bradbury, but failing to identify basis for disputing Bradbury's "angry and agitated" description). Ultimately, then, Plaintiff largely agrees, and has identified no evidence creating a meaningful dispute, that Plaintiff punched a bartender in the face multiple times and then faced-off with another individual, in an angry and agitated way, in the early-morning hours of September 9, 2018.

> **B. Plaintiff's Opposition Fails to Identify Evidence Creating a Genuine Issue of Material Fact as to Plaintiff's Claims Against Defendant Bellavance**
>
> 1. Plaintiff's Opposition Ignores the Framework for Determining the Reasonableness of Defendant Bellavance's Use of Force

The test for whether Defendant Bellavance violated Plaintiff's Fourth Amendment right to be free from the excessive use of force is a straightforward one: the Court must determine whether "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Defendant Bellavance's use of force was reasonable. *Graham v. Connor*,

3

490 U.S. 386, 396 (1989) (emphasis added).  Plaintiff's Opposition ignores the Supreme Court's instruction to evaluate the use of force from the perspective of a reasonable officer on the scene and makes only a conclusory argument as to why Plaintiff believes Defendant Bellavance's conduct was unreasonable.  In the end, there is no genuine issue of material fact as to whether Defendant Bellavance's use of force was reasonable: It was.

Plaintiff's Opposition leans heavily on the Burlington Police Department's investigation into Defendant Bellavance's use of force, even suggesting "a reasonable jury could conclude that Defendants' actions in disciplining, and eventually negotiating Sgt. Bellavance's departure serve as an admission that Sgt. Bellavance's actions were unlawful." Dkt. No. 144 at 15.  Plaintiff notes the Burlington PD determined Defendant Bellavance's use of force was "unnecessary or unreasonably departed from the expectations of" Defendant Bellavance's training.  *Id.* at 8-9.  That the Burlington PD determined Defendant Bellavance's conduct was inconsistent with the Burlington PD's internal standards does not, however, answer the legal question of whether Defendant Bellavance's use of force on September 9, 2018 was reasonable from the perspective of an officer on the scene on September 9, 2018.  *See Graham*, 490 U.S. at 396.  Indeed, the Burlington PD's internal standards are not based on reasonableness and, instead, impose more severe limitations on officers.  *See* Ex. A, Ryan Dep. 15:15-16:11 (describing Burlington PD's internal use of force standards as "very restrictive"); 18:4-20:13 (explaining how Bellavance's use of force violated Burlington PD's internal standards but was not unreasonable), Jun. 2, 2021.

In leaning on the Burlington PD's internal investigation, rather than focusing on the circumstances present on September 9, 2018, Plaintiff's Opposition runs afoul of the Supreme Court's instruction to avoid evaluating the use of force "with the 20/20 vision of hindsight." *Id.*  As a result, the evidence Plaintiff cites in their Opposition is not the type of evidence Plaintiff

needs to create a genuine issue of material fact regarding the reasonableness of Defendant Bellavance's use of force on September 9, 2018.

It is perhaps unsurprising, then, that Plaintiff's Opposition spends only one sentence applying the facts of this matter to the controlling *Graham* test. *See* Dkt. No 144 at 19 ("Comparing the facts to the [*Graham*] standard here . . . ."). Plaintiff's short and conclusory analysis of the *Graham* factors is without any citation to the facts in the record. *See id.* Plaintiff's analysis of the *Graham* factors also ignores the evidence in the record demonstrating a reasonable office in Defendant Bellavance's position on September 9, 2018 would have perceived Plaintiff, who had recently committed the crime of assault by punching a bartender in the face multiple times, as poised to commit a second assault. *See id.*; *see also* Dkt. No. 133 at § (IV)(A)(1)(a) (discussing evidence in record as to what Defendant Bellavance would have perceived). Careful attention to the facts that establish what a reasonable officer would have perceived on September 9, 2018, demonstrates Defendant Bellavance's use of force was reasonable. *See* Dkt. No. 133 at § (IV)(A)(1)(a).

In addition to failing to identify evidence in the record creating a genuine issue of material fact as to the reasonableness of Defendant Bellavance's use of force, Plaintiff's Opposition fails to identify case law supporting that Defendant Bellavance's use of force was unreasonable. While Plaintiff argues "[s]hoving, pushing, pulling, yanking, and throwing may all constitute excessive force," the cases cited by Plaintiff in support of that position involve factual circumstances far different than those Defendant Bellavance confronted on September 9, 2018. Dkt. No. 144 at 16. In *Maxwell v. City of New York*, a police officer pushed a female college student, who was of slight stature and already in handcuffs, face-first into the partition of a police cruiser. 380 F.3d 106, 108-110 (2d Cir. 2004). In *Robinson v. Via*, a police officer

"pushed [the plaintiff] against the inside of the door of her car, yanked her out, threw [the plaintiff] up against the fender, and twisted [the plaintiff's] arm behind [the plaintiff's] back." 821 F.2d 913, 923–24 (2d Cir. 1987) (internal quotation marks omitted). Finally, in *Bellows v. Dainack*, the plaintiff alleged police officers twisted his arm, pushed him into the back seat of a police car, pulled him by the scruff of his neck, and struck him in the ribs. 555 F.2d 1105, 1106 (2d Cir. 1977). Given the factual dissimilarity between those cases and this matter, they provide no support for Plaintiff's argument that Defendant Bellavance's use of force was unreasonable.[1]

Ultimately, Plaintiff's Opposition neither highlights evidence in the record nor identifies case law creating a genuine issue of material fact regarding Plaintiff's use of force claim against Defendant Bellavance. Since, as discussed in Defendants' Motion, Defendant Bellavance's use of force was reasonable, Defendant Bellavance is entitled to summary judgment on Plaintiff's use of force claim.

2. Plaintiff's Opposition Does Not Identify Authority Which Made Clear to Defendant Bellavance that Pushing Plaintiff Violated Plaintiff's Fourth Amendment Rights

Defendant Bellavance is protected from Plaintiff's excessive use of force claim by qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue" in this matter. *Beaudry v. McKnight*, No. 2:17-CV-23, 2019 WL 1296628, at *12 (D. Vt. Mar. 21, 2019) (*quoting Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)) (internal quotation marks in original). To remove Defendant Bellavance's qualified immunity shield, Plaintiff must point to precedent that would have made clear to Defendant Bellavance, as of September 9, 2018, that Defendant Bellavance's push of Plaintiff would violate Plaintiff's Fourth Amendment rights.

---

[1] Plaintiff's Opposition also suggests Defendants' Motion cites *Saucier v. Katz*, 533 U.S. 194, 201 (2001), "for the proposition that a shove is not excessive force . . . ." Dkt. No. 144 at 17. That is incorrect. While Defendants' Motion does cite *Saucier*, Defendants' Motion does so for a different principle and does not assert *Saucier* is factually similar to this matter. *See* Dkt. No. 133 at 12 (citing *Saucier*).

Plaintiff's Opposition identifies no such precedent.  *See* Dkt. No. 144 at 17-18 (arguing "Sgt. Bellavance Is Not Entitled to Immunity").

Plaintiff's Opposition asserts Plaintiff "had a right to explain himself, a right to be treated with dignity[,] and a right to be free from suffering a brain injury simply because he was involved in a verbal dispute." *Id.* at 18.  Preliminarily, Plaintiff's Opposition cites no authority demonstrating these are constitutionally protected rights.  *See id.*  More importantly, the right alleged to have been violated in this matter is Plaintiff's Fourth Amendment right to be free from the excessive use of force during an arrest and/or seizure.  *See* Dkt. 21 at ¶ 38 (alleging "use of excessive force . . . constituted an illegal and unreasonable seizure of Jeremie."); *see also Graham*, 490 U.S. at 395 (holding all claims of excessive force during arrest "should be analyzed under the Fourth Amendment . . . .").  The supposed rights identified in Plaintiff's Opposition are not at issue here and have nothing to do with whether Defendant Bellavance is entitled to qualified immunity with respect to Plaintiff's excessive force claim.  *See id.*

In the end, Plaintiff's Opposition points to no authority whatsoever that would have made clear to Defendant Bellavance that his conduct on September 9, 2018 was unlawful in the situation he confronted.  *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004).  With Plaintiff having identified no such authority, Defendant Bellavance is protected by qualified immunity and entitled to summary judgment on Plaintiff's § 1983 excessive force claim.

3. <u>Plaintiff's Opposition Fails to Meaningfully Address Plaintiff's Assault Claim and Battery Claim Against Defendant Bellavance</u>

Plaintiff's Opposition does not substantively respond to Defendants' arguments for summary judgment on Plaintiff's assault claim against Defendant Bellavance.  *See generally* Dkt. No. 144.  The most Plaintiff's Opposition does is quote deposition testimony from an eyewitness who described Defendant Bellavance's push of Plaintiff as an assault.  *See id.* at 20-

7

21. An eyewitness describing his subjective impression of Defendant Bellavance's push as an assault is not, of course, sufficient evidence in the record to create a genuine issue of material fact as to Plaintiff's assault claim. The discussion of Plaintiff's battery claim in Plaintiff's Opposition is similarly short, conclusory, and insufficient to create a genuine issue of material fact. *See id.* (discussing battery claim).

Plaintiff's Opposition also fails to demonstrate a basis for denying Defendant Bellavance the benefit of Vermont's qualified immunity doctrine for Plaintiff's assault claim and battery claim. Plaintiff argues, without identifying supporting authority, that "using excessive force does not fall under the ambit of discretionary acts," such that Defendant Bellavance should be denied qualified immunity. Dkt. No. 144 at 20. This is incorrect; as this Court has recognized, "how a police officer responds to the decision of whether, when, and how to arrest a person has repeatedly been recognized in Vermont to be a quintessential discretionary function." *MacLeod v. Town of Brattleboro*, No. 5:10-CV-286, 2012 WL 5949787, at *18 (D. Vt. Nov. 28, 2012); *see also Brayshaw v. City of Burlington*, No. 5:13-CV-253, 2015 WL 1523019, at *14 (D. Vt. Apr. 3, 2015) (citing cases supporting that officer's use of force is discretionary). As discussed in Defendants' Motion, Defendant Bellavance is entitled to summary judgment both because his push of Plaintiff was not an assault or a battery and because Defendant Bellavance is protected by Vermont's qualified immunity doctrine. *See* Dkt. No. 133 at 14-18. Accordingly, summary judgment is appropriate.

4. Plaintiff's Opposition Fails to Meaningfully Address Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff's Opposition indulges in a bit of hyperbole – asserting Defendant Bellavance "willfully [injured Jeremie Meli] simply because he [could]," but fails to identify evidence in the record necessary to support all the necessary elements of Plaintiff's IIED claim. Dkt. No. 144 at

8

19-20.  While there is evidence in the record supporting that Defendant Bellavance intended <u>to push</u> Plaintiff, Plaintiff's Opposition highlights no evidence supporting that Defendant Bellavance intended <u>to cause emotional distress</u> to Plaintiff.  *See id.*  Plaintiff misconstrues the 'intentional' element of his IIED claim, attempting to the substitute intentional act of a push for the required showing that Defendants acted with the intent to cause Plaintiff emotional distress.  *See Baptiste v. Burno*, 88 A.3d 1212, 1219 (2013).  Without such evidence, Plaintiff's IIED claim fails.  *See* Dkt. No. 133 at 18-20.  Accordingly, summary judgment is appropriate on Plaintiff's IIED claim.

> 5. <u>Plaintiff's Opposition Does Not Identify Evidence Demonstrating Defendant Bellavance Heedlessly and Palpably Violated a Duty Owed to Plaintiff</u>

Plaintiff's Opposition suggests Defendant Bellavance "reasonably should have known his actions in shoving Jeremie forcefully into a brick wall would result in serious bodily injury or death . . . ." Dkt. No. 144 at 21.  Setting aside that this is a lopsided description of the evidence in the record, Plaintiff's gross negligence claim requires proof of a "wholesale abdication of care," and heedless and palpable violation of a duty, by Defendant Bellavance.  *Fortunati v. Campagne*, 681 F. Supp. 2d 528, 544–45 (D. Vt. 2009).  Plaintiff's Opposition does not even identify the specific duty Plaintiff contends Defendant Bellavance owed Plaintiff and breached, let alone highlight evidence in the record supporting the major deviation from the standard of care required to sustain a gross negligence claim.  *See* Dkt. No. 144 at 21.  Accordingly, summary judgment is appropriate on Plaintiff's gross negligence claim.

> C. **<u>Plaintiff's Opposition Fails to Identify Evidence Creating a Genuine Issue of Material Fact as to Plaintiff's Claims Against Defendant City of Burlington</u>**
>
> > 1. <u>Plaintiff Is Without Evidence Demonstrating the Discriminatory Purpose Necessary to Support His Equal Protection Claim</u>

Plaintiff's Amended Complaint alleges Defendant City of Burlington "has allowed a pattern of behavior to form . . . which encourages the <u>unlawful use of force</u> against minorities." Dkt. No. 21 at ¶ 67 (emphasis added).  Plaintiff's Amended Complaint continues, asserting this "pattern of behavior of Defendant City of Burlington is based upon <u>disparate use of force and escalation of force</u> in interactions with white persons and [B]lack persons." *Id.* at ¶ 68 (emphasis added).  As such, Plaintiff's own pleadings make clear Plaintiff's disparate impact claim against Defendant Burlington is based on the Burlington PD's use of force policy.  *See id.* at ¶¶ 67-68.

Despite Plaintiff having specifically pled a disparate impact claim based on the way the Burlington PD uses force, Plaintiff's Opposition attempts to broaden and reframe Plaintiff's disparate impact claim.  Now, according to Plaintiff's Opposition and not withstanding the language of Plaintiff's Amended Complaint, Plaintiff's disparate impact claim "is that the City of Burlington's policing is disproportionately focused on people of color generally, and the [City of Burlington's] use of force has a similar disparate impact on people of color, and did so on Jeremie Meli . . . ." Dkt. No. 144 at 23.  Plaintiff's attempt to make this shift is an implicit recognition of the absence of evidence in the record to support Plaintiff's disparate impact claim against Defendant Burlington.

Plaintiff's Opposition cannot, however, escape that Plaintiff's disparate impact claim is grounded in the way the Burlington PD uses force.  Even in trying to wiggle away from the use of force basis for their disparate impact claim, Plaintiff argues in his Opposition that Defendant Burlington's police officers' "<u>use of force</u> has a . . . disparate impact on people of color," that Defendant Burlington's "<u>use of force policy</u> was known by [Defendant del Pozo] to have a disproportionate effect on African Americans," and Defendant del Pozo "knew his officers were <u>disproportionately using force</u>" on Black people.  *Id.* at 23-24 (emphasis added).  To create a

10

genuine issue of material fact regarding their disparate impact claim, then, Plaintiff's Opposition must identify evidence in the record substantiating that the Burlington PD's use of force has a disparate impact on Black people.

Specifically, Plaintiff must produce evidence demonstrating the Burlington PD's use of force was motivated by a discriminatory purpose. *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010). Discriminatory purpose is present when a decision-maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (internal quotation marks in original). Plaintiff points to four sources of information in support of his disparate impact claim: 1.) An article written by Defendant del Pozo two decades ago; 2.) Statistical evidence compiled by Dr. Stephanie Seguino and the City of Burlington; and 3.) Two other incidents involving the Burlington PD; and 4.) Fake social media accounts maintained by Defendant del Pozo and Jan Wright of the Burlington PD. Dkt. No. 144 at 10-13.

Three of Plaintiff's four categories of information are easily dispensed with: Defendant del Pozo's article, the two other incidents involving the Burlington PD, and the fake social media accounts maintained by Defendant del Pozo and Jan Wright in no way demonstrate Defendant Burlington was motivated by a discriminatory purpose in implementing the City's policy on the use of force. Indeed, Plaintiff's Opposition draws no connection between these three sources of information and a discriminatory purpose on the part of the City of Burlington. *See id.* Plaintiff seems to suggest the actions of these individuals demonstrate a racial bias, which should be extrapolated to support that the City of Burlington was motivated by a discriminatory purpose in implementing its use of force policy. *See id.* There is no basis for making that leap.

Plaintiff's fourth category of information, statistical evidence compiled by Dr. Stephanie Seguino and the City of Burlington, also fails to create a genuine issue of material fact with respect to Plaintiff's disparate impact claim.  In short, Dr. Seguino's work has nothing to do with the Burlington PD's use of force.  Instead, Dr. Seguino's statistical analyses are exclusively based on traffic stop data:

```
 2         Yeah.  And I would just say, I would limit the
 3    policing data that I am testifying about is the traffic
 4    stop data exclusively.
```

Ex. B, Seguino Dep. 11:2-4, Jul. 13, 2021.  Indeed, Dr. Seguino does not contend the Burlington PD's use of force was motivated by a discriminatory purpose:

```
 4         Q    And similarly, will you be offering testimony
 5    that the Burlington Police Department's use of force
 6    policy in effect in September of 2018 was motivated by a
 7    discriminatory animus or discriminatory intent?
 8         A    So, again, I'll answer your question, that is,
 9    no.  But any inference would be related to actual
10    behavior, not the policy.  These data that I analyze for
11    traffic stops is not talking about policy.  It is
12    talking about officer behavior.
```

*Id.* at 49:4-12.  It is Dr. Seguino's opinion that since traffic stop data demonstrates what Dr. Seguino believes to be implicit biases by police officers in effecting traffic stops, officers of the Burlington PD must be influenced by implicit bias in their use of force:

```
 2        Q    And, so, your opinion in terms of how it's
 3   been implemented would be it's been implemented
 4   consistent with the data that you have collected with
 5   traffic stops.
 6        A    So I wouldn't say it that way.  This is what I
 7   would say, is that based on the analysis that we have
 8   done of traffic stop data that demonstrate racial --
 9   differential treatment based on race, it is a reasonable
10   assumption that if there are biased behaviors in traffic
11   stops, there are biased behaviors in other interactions
12   with citizens.
```

*Id.* at 55:2-12.

Even if Dr. Seguino's "assumption" about a connection between traffic stop data and officer behavior in implementing a use of force policy was reliable and/or correct, it would support only that officers in the Burlington PD are influenced by implicit biases when using force. *See id.* Dr. Seguino's opinions are about <u>officer behavior</u>, not about Defendant Burlington's policies or the motivations behind those policies. *See id.* As such, Dr. Seguino's testimony does not support that decisionmakers from Defendant Burlington were motivated to develop and/or to maintain Defendant Burlington's use of force policy because of the policy's discriminatory impact on Black people. *See Hayden*, 594 F.3d at 163. That is, in short, not what Dr. Seguino's work is about. Additionally, Dr. Seguino's analyses do not meet the criteria necessary for a fact finder to rely upon them, as discussed in Defendants' Motion. *See* Dkt. No. 133 at § (IV)(B)(2)(b). Since Dr. Seguino's analyses do not provide the type of information Plaintiff needs to sustain a disparate impact claim, Dr. Seguino's analyses do not create a genuine issue of material fact of Plaintiff's disparate impact claim.

The statistics compiled by Defendant Burlington on use of force are similarly unhelpful to Plaintiff's disparate impact claim. Plaintiffs discussion of Defendant Burlington's use of force

statistics makes population-based comparisons suggesting, for example, that "the fact that 20.9% of use of force incidents occur against a [B]lack population of 5.7% is further proof" of discrimination by Defendant Burlington.  Dkt. No. 144 at 23.  This type of population-based comparison is too blunt to support a disparate impact claim.

As the Second Circuit has explained in the context of Title VII claims, a "statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups." *Id.* at 210.  To meet that requirement, the analysis must have a tailored benchmark.  *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 585 (S.D.N.Y. 2013).  With respect to disparate impact claims, general population statistics are extremely unlikely to provide the tailored benchmark that is required for a valid comparison.  *See id.*; *Chavez v. Illinois State Police*, 251 F.3d 612, 643-44 (7th Cir. 2001) (finding census-based population data was unreliable benchmark in disparate impact claim).

Indeed, Defendant Burlington's use of force report itself – the document Plaintiff relies on to make his population-based comparison – explicitly notes the inappropriateness of a population-based comparison.  *See* Dkt. No. 144, Ex. 34 at 6, n. 10.  The report explains "benchmarks based on the census have been widely discredited" and goes on to suggest more appropriate benchmarks to use for comparison, all of which Plaintiff has ignored.  *Id.*  As a result, and for the additional reasons discussed in Defendants' Motion, Plaintiff's cannot rely upon Defendant Burlington's use of force data to create a genuine issue of material fact with respect to Plaintiff's disparate impact claim.

In the end, Plaintiff's Opposition identifies no evidence in the record demonstrating Defendant Burlington pursued a discriminatory purpose with its use of force policy.  Plaintiff's Opposition points to evidence of individual behaviors which, even if they were motivated by

discriminatory purpose, would not create a genuine issue of material fact with respect to Plaintiff's disparate impact claim. The statistical analyses cited in Plaintiff's Opposition similarly fail to support Plaintiff's claim. What Plaintiff's Opposition was required to do, and what Plaintiff's Opposition has failed to do, is identify evidence in the record demonstrating Defendant Burlington was motivated by a discriminatory purpose in implementing its use of force policy. *See Hayden*, 594 F.3d at 163. Accordingly, summary judgment is appropriate on Plaintiff's Fourteenth Amendment claim against Defendant Burlington.

  2. <u>Plaintiff's Opposition Does Not Meaningfully Address Plaintiff's Fourth Amendment Failure to Train, Supervise, and/or Discipline Claims</u>

Plaintiff's Opposition does not meaningfully address Plaintiff's failure to train, supervise, and/or discipline claims against Defendant Burlington. Accordingly, for the reasons set forth in Defendants' Motion, summary judgment is appropriate on Plaintiff's Fourth Amendment claims against Defendant Burlington as well. *See* Dkt. No. 133 at § (IV)(B)(1).

  3. <u>Plaintiff Has Not Pled a *Respondeat Superior* Claim Against Defendant Burlington</u>

Plaintiff's Opposition suggests Defendant Burlington may have *respondeat superior* liability for Plaintiff's state law claims even if Defendant Bellavance is protected by qualified immunity.[2] *See* Dkt. No. 144 at 25. Plaintiff has not, however, pled that Defendant Burlington has *respondeat superior* liability for any of Plaintiff's state law claims. *See* Dkt. No. 21 at ¶¶ 49-63 (not pleading *respondeat superior* liability for state law claims).

Even if it is possible for Defendant Burlington to have *respondeat superior* liability in this matter, that is not a claim Plaintiff has pled. Accordingly, if Defendant Bellavance is entitled to summary judgment on Plaintiff's state law claims on qualified immunity grounds, there is no basis for allowing Plaintiff's state law claims to proceed against Defendant Burlington.

---

[2] Plaintiff concedes, as he must, there is no *respondeat superior* liability for a §1983 claim. *See* Dkt. No. 144 at 21.

D. **Plaintiff's Opposition Identifies No Genuine Issues of Material Fact Regarding Plaintiff's Claims Against Defendant del Pozo**

Plaintiff's Opposition is brief in its discussion of claims against Defendant del Pozo. Plaintiff's Opposition does not identify a factual or legal basis for maintaining official capacity claims against Defendant del Pozo. *See* Dkt. No. 144 at 24-25. The sole case cited in support of Plaintiff's argument for maintaining official capacity claims against Defendant del Pozo discusses a *Bivens* action, which this is not. *See id.*

Plaintiff's Opposition also fails to substantively address the legal standards for Plaintiff's failure to train, supervise, and/or discipline claims against Defendant del Pozo. *See id.* Plaintiff makes one factual assertion – that Defendant del Pozo knew officers in the Burlington PD "were disproportionately using force against African Americans and that he chose not to take action in light of this information." *Id.* at 24. The evidence cited by Plaintiffs does not, however, support this assertion. *See id.* Neither the letter nor the deposition testimony cited in Plaintiff's Opposition address a disproportionate use of force against Black people. *See id.* Ultimately, then, Plaintiff's Opposition highlights no evidence in the record creating a genuine issue of material fact with respect to Plaintiff's claims against Defendant del Pozo. Accordingly, summary judgment on the claims against Defendant del Pozo is appropriate.

III. **CONCLUSION**

There is a framework for Plaintiff's claims against Defendant Burlington, Defendant Bellavance, and Defendant del Pozo. To create genuine issues of material fact and survive summary judgment, Plaintiff must highlight evidence in the record that fits the framework Plaintiff set up when he decided which claims to bring against Defendants. The facts Plaintiff relies upon to tell his story here do not fit the framework necessary to substantiate Plaintiff's claims. There is a gap, which Plaintiff's Opposition does not bridge, between the way in which

Plaintiff wants to prove his claims and the way in which Plaintiff must prove his claims. Accordingly, Defendants respectfully submit they are entitled to summary judgment on Plaintiff Jeremie Meli's claims.

Dated at Burlington, Vermont this 20th day of September, 2021.

             CITY OF BURLINGTON, BRANDON
             DEL POZO, & JASON BELLAVANCE

By: */s/ Pietro J. Lynn*
   Pietro J. Lynn, Esq.
   Barbara R. Blackman, Esq.
   Lynn, Lynn, Blackman & Manitsky, P.C.
   *Attorneys for Defendants*
   76 St. Paul St., Suite 400
   Burlington, VT  05401
   (802) 860-1500
   plynn@lynnlawvt.com
   bblackman@lynnlawvt.com